The plaintiffs, Becky and Chris Helms, appeal from judgments for the defendants, Helms' Kennels, Inc. ("the corporation"), and John Oliver, as executor of the estate of John Bankhead III ("the estate"). We reverse and remand.
 I.
In 1986, the Helmses entered into the greyhound dog training business with Bankhead. The three of them formed Helms' Kennels, Inc., with Bankhead listed as the sole incorporator, director, and shareholder. The corporation purchased approximately 40 acres of land at McCalla, Alabama, and constructed a house and a greyhound training facility on the property. Thereafter, the Helmses moved into the house and began operating the training facility.
Bankhead died in 1988. After his death, a dispute arose about the ownership of the corporation and its only assets, the house and greyhound training facility. The Helmses sued the estate and the corporation in the Birmingham Division of the Jefferson Circuit Court, seeking among other things, a judgment (1) declaring that they owned half the stock in the corporation; (2) requiring the corporation to issue them half of the shares of the corporation's stock, and (3) giving them title to the house and damages for breach of contract.
The corporation counterclaimed, alleging that the Helmses owed it money. The estate cross-claimed against the corporation, alleging that the corporation owed money to the estate. On April 9, 1993, the trial court entered a judgment for the estate for $21,744 against the Helmses, a judgment for the estate against the corporation in the amount of $581,918, and, critical to this appeal, a judgment for the Helmses against the corporation in the amount of $91,075. It also entered a judgment for the corporation as to the Helmses' claim for compensation and their claim seeking title to the real property. Moreover, the trial court declared that the *Page 1345 
estate was the sole stockholder of the corporation.
Although the parties filed several post-trial motions, they never appealed the final judgment. On May 14, 1993 (more than 30 days after the trial court's final judgment), the Helmses recorded a certificate of judgment in the Bessemer Division of the Probate Court of Jefferson County. The real property is located in the Bessemer Cut-Off, served by the Bessemer Division. The Helmses did not notify the Birmingham Division of the circuit court or the other parties that they had filed a lien on the property based on the judgment. Although the Helmses recorded the entire court order with the certificate of judgment, the certificate itself referred only to the $91,075 judgment for the Helmses. The estate did not record a lien based on the trial court's judgment.
In September 1993, the estate (as sole owner of the corporation) secured a written contract for the sale of the house and 10 acres of the land ("the sale property") for $167,500. However, the Helmses refused to release their judgment lien on the sale property, so that the title to the property would be marketable, unless the estate agreed to fully satisfy the Helmses' lien from the sale proceeds. On October 28, 1993, the estate and the corporation filed a "motion for order approving sale of property"[1] with the Birmingham Division of the Jefferson Circuit Court requesting that the court order the Helmses to release their lien on the sale property and, because the sale proceeds would be insufficient to satisfy both the Helmses' and the estate's judgments against the corporation, to accept a pro rata portion of the sale proceeds.
On November 5, 1993, the court ordered the Helmses to release their lien on the property. The court also ordered that the sale proceeds be paid into court and that the rights of the parties as they existed before the sale would attach to the proceeds. The court did not determine how the proceeds would be distributed. In response, the Helmses petitioned this Court for a writ of mandamus and an emergency stay to stop the sale of the property, arguing that the Birmingham Division of the Jefferson Circuit Court did not have jurisdiction over the property, which was located in the area served by the Bessemer Division. We denied the Helmses' petition. On November 12, 1993, the Helmses appealed the November 5, 1993, order of the Birmingham Division, arguing that the court could not order the sale of the property clear of their lien and that the court did not have jurisdiction over the sale property.
While their appeal was pending, the Helmses moved the Birmingham Division to transfer the action to the Bessemer Division of the circuit court. The Birmingham Division denied the motion and on November 23, 1993, the court amended its final judgment, per Rule 60(b), A.R.Civ.P., to require apro rata distribution of the proceeds to the parties. The Helmses then filed a second appeal, contending that the Birmingham Division of the circuit court did not have the authority to order the sale proceeds distributed on a pro rata
basis. Because these appeals involve the same parties and the same property, we review them together.
 II.
The dispositive issue in this case is whether the trial court, more than six months after the entry of its final judgment, had the authority to order the Helmses to lift their judgment lien and to require the distribution of the sale proceeds pro rata between the claims of the Helmses and the estate. Because this issue is a question of law, we review the trial court's rulings de novo.
 III.
On November 5, 1993, the Birmingham Division of the Jefferson Circuit Court ordered (1) that the Helmses lift their judgment lien on the sale property, (2) that the property be sold, and (3) that the sale proceeds be paid into the court. On November 23, 1993, that court issued a further order amending its April 9, 1993, final judgment. The trial court's November 23 order stated: *Page 1346 
 "It was always intended by the Court that the judgment creditors would share pro rata in the assets of Helms' Kennels. Accordingly, the Final Judgment rendered by this Court is hereby amended pursuant to Rule 60(b) of the Alabama Rules of Civil Procedure to provide as follows:
 "In the event the assets of Helms' Kennels are not sufficient to pay the judgments rendered in this case, then the judgment creditors holding judgments against Helms' Kennels shall share pro rata in the assets and in any and all amounts received from the sale of assets of Helms' Kennels."
The effect of these two changes to the original final judgment was to invalidate the Helmses' judgment lien and to reduce their share of the sale proceeds from the entire amount of their judgment, $91,075, to approximately $20,000. Both the November 5, 1993, order directing the Helmses to lift their lien and the November 23, 1993, order directing that the proceeds of the sale be paid pro rata change the effect of the Helmses' lien obtained pursuant to the trial court's final judgment of April 9, 1993. Because both orders combine to affect the validity and operation of the Helmses' lien, the trial court's November 1993 orders are treated as a single transaction.
The estate argues that its "Motion for Order Approving Sale of Property," which initiated the trial court's November orders amending its final judgment, simply sought a clarification of the meaning of that judgment — a determination of whether the Helmses or the estate had correctly interpreted the final judgment. The estate claims that it did not file a lien on the corporation's property because it had always believed that the final judgment required the corporation to distribute the proceeds from the sale of its assets to its creditors on a prorata basis if those proceeds were insufficient to satisfy all of the judgments.
The defendants argue that the trial court's November orders lifting the Helmses' lien and amending and interpreting the April 9 final judgment to call for a pro rata distribution was proper under either the court's inherent authority to enforce its judgments, or under its authority by Rule 60(b)(6), A.R.Civ.P., to grant relief from a judgment within a reasonable time after entry of that judgment "for any other reason justifying relief."
The Helmses make several arguments in response. They first contend that the trial court was without the authority to order a pro rata distribution of the sale proceeds because they had already established a valid lien on the property and, they say, the court was without in rem jurisdiction to affect that lien. They also argue that the court did not have authority under Rule 60(b) to modify the final judgment because they say that if the court had simply omitted or neglected to specify how their lien would apply or to order a pro rata distribution of the sale proceeds to the corporation's judgment creditors, that omission would be redressable only under Rule 60(b)(1), which allows relief from a final judgment based on "mistake, inadvertence, surprise, or excusable neglect."
The Helmses note that Rule 60(b)(1) motions must be brought within four months of the final judgment and that the defendants' motion was not filed within that time limitation. They also note that under Rule 60(b), the reasons for providing relief from a judgment provided in clauses (1) through (5) are mutually exclusive of that provided in clause (6), which allows a longer time. Finally, the Helmses argue that even if the trial court had the authority to "interpret" its final order, that order needed no interpretation because it clearly expressed the judgments in favor of the Helmses and the estate against the corporation, without stating how the judgments were to be satisfied.
We have closely examined the trial court's April 9, 1993, final judgment in its entirety and have found no mention or implication that the court intended that the Helmses would not be entitled to an ordinary judgment lien or that the proceeds from the sale of the corporation's assets should be distributed to its creditors on a pro rata basis if they were insufficient to satisfy all the judgments against the corporation. In fact, nowhere in the 18-page order did the court discuss the sale of the corporation's assets or the satisfaction of the judgments. *Page 1347 
Although a trial court does have residual jurisdiction or authority to take certain actions necessary to enforce or interpret a final judgment, see Jones v. City of Opelika,242 Ala. 24, 4 So.2d 509 (1941), that authority is not so broad as to extend to the actions taken by the trial court in this case, especially the actions taken more than six months after the final judgment. In this case, there is nothing about the original final judgment that makes it ineffectual or that requires amendment by the trial court to resolve the claims made by the parties in the original action. Moreover, the final judgment does not arise from fraud or show some other invalidity that would support the exercise of the court's inherent power to regulate its judgments. Harrison v. Harrison,404 So.2d 330 (Ala. 1980); Doby v. Carroll, 274 Ala. 273,147 So.2d 803 (1962); Holden v. Holden, 273 Ala. 85, 134 So.2d 775
(1961).
Further, we conclude that the trial court's November orders modifying its final judgment exceeded its authority under Rule 60(b)(6), which is applicable only in exceptional circumstances. See Hoffman v. Celebrezze, 405 F.2d 833 (8th Cir. 1969); City of Birmingham v. City of Fairfield,396 So.2d 692 (Ala. 1981); State ex rel. Fuller v. Fuller, 623 So.2d 332
(Ala.Civ.App. 1993). A Rule 60(b)(6) motion is an inappropriate means to get relief from a judgment based on an alleged misinterpretation of the judgment. Transit Casualty Co.v. Security Trust Co., 441 F.2d 788 (5th Cir. 1971). The trial court's November orders did more than "interpret" the trial court's final judgment — they modified the vested rights of the corporation's creditors, which had been definitely established more than six months earlier.
Our society benefits from a judicial system that recognizes and respects the finality and definiteness of a trial court's "final judgment" deciding what was previously disputed and uncertain. If the rights of litigants were allowed to remain unsettled indefinitely, chaos would surely result. Instead, "the first and most obvious consequence of a judgment is that it establishes an indisputable obligation, and a final judgment definitely fixes the rights and liabilities of the parties in the action as to the matters submitted to the court for decision." 46 Am.Jur.2d Judgments § 229 (1969). It has been noted:
 " 'Very high among the interests in our jurisprudential system is that of finality of judgments. It has become almost a judicial commonplace to say that litigation must end somewhere, and we reiterate our firm belief that courts should not encourage the reopening of final judgments or casually permit the relitigation of litigated issues out of a friendliness to claims of unfortunate failures to put in one's best case.' "
United States v. Cirami, 563 F.2d 26 at 33 (2d Cir. 1977), quoted by Chief Justice Torbert in his dissent in Textron, Inc.v. Whitfield, 380 So.2d 259 at 262 (Ala. 1979). By filing a lien on the corporation's property, the Helmses relied on the certainty of the court's final judgment and simply acted to protect their rights as provided by law.
Accordingly, we hold that the trial court's order lifting the Helmses' lien on the corporation's property and requiring apro rata distribution of the sale proceeds to the corporation's judgment creditors is void. We reverse the trial court's order and remand this cause to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
MADDOX, SHORES, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.
[1] Although the motion was not specifically designated by the estate or the corporation as a Rule 60(b), A.R.Civ.P, motion, the trial court apparently treated it as one.