MAIN, Justice.
These three appellate proceedings have been consolidated for purposes of writing one opinion. The action underlying the first appeal (case no. CV-10-900165) was filed in the Etowah Circuit Court on April 15, 2010, by George Bates and David Joyner against Donald W. Stewart, individually and as trustee of the Abernathy Trust, and the Abernathy Trust Foundation (hereinafter referred to as “the Foundation”). In appeal no. 1100063, Bates and Joyner appeal from a judgment of the Etowah Circuit Court dismissing their complaint against Stewart and the Foundation. The underlying case will hereinafter be referred to as “the first action.” *839 The action underlying appeal no. 1101456 was filed in the Etowah Circuit Court on January 20, 2011, by Lindy Adams, Ed F. Davidson, and Roosevelt Boyd (hereinafter referred to as “the Adams plaintiffs”), who filed what they entitled a “motion to intervene as plaintiffs and for an accounting and other relief’ from Donald W. Stewart, Donald W. Stewart, P.C., and Kasowitz, Benson, Torres & Friedman LLP (hereinafter referred to collectively as “Stewart and Kasow-itz”)(ease no. CV-01-832). The Adams plaintiffs filed their motion in a long-standing action against Monsanto Company, its parent corporation, and a spin-off corporation. In appeal no. 1101456, Stewart and Kasowitz appeal from orders entered by the trial court on August 22 and September 9, 2011, purporting to reopen a final judgment in that action entered in 2003. The action underlying appeal no. 1101456 will hereinafter be referred to as “the second action.”
Stewart and Kasowitz have also filed a petition for a writ of mandamus asking this Court to require the trial court in the second action to vacate its orders of August 22 and September 9 (no. 1101452). This proceeding will hereinafter be referred to as “the mandamus petition.” As to the appeal in the first action, we affirm in part, reverse in part, and remand. As to the appeal in the second action, we dismiss the appeal as moot. As to the mandamus petition, we grant the petition in part, deny it in part, and issue the writ.
I. Factual Background and Procedural History
These appellate proceedings are the most recent in a line of cases arising out of a toxic-tort action against Monsanto Company; its parent corporation, Pharmacia Corporation; and a spin-off corporation, Solutia, Inc. (hereinafter referred to collectively as “the Monsanto corporations”). The Monsanto corporations manufactured and disposed of polychlorinated biphenyls (“PCBs”) in Anniston from 1935 to 1971. The manufacture and distribution of toxic substances such as PCBs were banned in the United States in 1976. See 15 U.S.C. § 2605(e). In 1996, Thomas Long, Sr., sued the Monsanto corporations, alleging that the Monsanto corporations had released PCBs and other harmful chemicals into the air, soil, surface water, and groundwater near his property in Calhoun County and that he suffered physical harm and other damage as a result of the release of those chemicals. Two other actions were filed against the Monsanto corporations alleging negligence, wantonness, breach of a duty to warn, fraud, misrepresentation, deceit, private and public nuisance, trespass, the tort of outrage, common-law strict liability, assault, battery, and negligent and intentional infliction of emotional distress arising from the release of those chemicals. The three actions, with over 3,500 plaintiffs (hereinafter referred to as “the Monsanto plaintiffs”), were consolidated; however, the action resulting from the consolidation (hereinafter referred to as “the Monsanto litigation”) was not a class action. The Monsanto litigation, styled “Sabrina Abernathy et al. v. Monsanto Company et al.,” was transferred from Calhoun County to Etowah County, and Judge Joel Laird, a judge in the Calhoun Circuit Court, was appointed by the Chief Justice of this Court as a special judge in Etowah County to preside over the ease.[1] On January 7, 2002, a jury trial began on claims common to all the Monsanto plaintiffs and on the property- *840 damage claims of 17 of those plaintiffs. The jury found the Monsanto corporations liable on the Monsanto plaintiffs’ claims of wantonness, the tort of outrage, “suppression of the truth,” negligence, trespass, nuisance, and public nuisance.
After seven years of litigation, a trial as to liability, and approximately 500 individual trials on damages, the parties reached a settlement for $300 million in 2003. The settlement agreement required the Monsanto corporations to make an immediate payment of $275 million and 10 annual payments of $2.5 million thereafter, for a total of $300 million. The $275 million payment, less $35 million, was disbursed to the Monsanto plaintiffs and their attorneys and was used to pay the claims of each settling Monsanto plaintiff, to fund a relocation/property-adjustment fund for the benefit of approximately 920 Monsanto plaintiffs who were property owners and residents in the affected area, to pay attorney fees, and to reimburse the Monsanto plaintiffs’ attorneys for the costs and expenses incurred in the Monsanto litigation. The Monsanto plaintiffs’ attorneys were to be paid a 40% attorney fee from the $275 million payment, less $15 million in costs and expenses, in addition to a 40% attorney fee from each annual $2.5 million payment.
The settlement agreement provided that of the $35 million not disbursed to the Monsanto plaintiffs $21 million was to be placed into a trust (hereinafter referred to as “the Abernathy trust”) established to pay health-care and educational benefits to those Monsanto plaintiffs who qualified for assistance with medical treatment and other health-care services and/or who qualified for assistance with educational grants, scholarships, or loans, and $14 million was to be paid as attorney fees. Of each annual payment of $2.5 million, $1.5 million was to be placed into the Abernathy trust, and $1 million — 40%—was to be paid as attorney fees. Paragraphs 3.g. and 3.h. of the settlement agreement, the provisions that address the requirements for establishing and funding the Abernathy trust, state:
“g. Thirty-Five Million Dollars ($35,000,000.00), plus any interest accrued on such amount during the time such money was on deposit in the Settlement Account and the Escrow Account, shall be paid directly from the Escrow Account to plaintiffs’ counsel and to a corporation, foundation, trust or other appropriate entity designated by [the Monsanto] plaintiffs’ counsel as follows:
“i. Fourteen Million Dollars ($14,-000,000.00), plus any interest accrued on such amount during the time such money was on deposit in the Settlement Account and the Escrow Account, shall be paid to [the Monsanto] plaintiffs’ counsel for attorneys’ fees;
“ii. Twenty-One Million Dollars ($21,000,000.00), plus any interest accrued on such amount during the time such money was on deposit in the Settlement Account and the Escrow Account, shall be used by the corporation, foundation, trust or other appropriate entity for the following general purposes, and the corporation, foundation, trust or other entity will have the authority to expend funds for such purposes, but will not be required to perform every such purpose:
“(1) To provide primary health care and/or to assist in gaining access to primary health care and other health care services (including but not limited to lab, dental, outreach, prenatal care, radiology, case management, pharmacy, preventive medicine, holistic medicine and other health care programs) by making grants or payments for the actual benefit of persons meeting the criteria of the *841 corporation, foundation, trust or other entity;
“(2) To provide educational grants, scholarships or loans to persons meeting the criteria of the corporation, foundation, trust or other entity for purposes including but not limited to those described in subparagraph (5) below;
“(3) To provide health education and instruction to or on behalf of persons meeting the criteria of the corporation, foundation, trust or other entity;
“(4) To provide such other programs or payments relating to health, education and community welfare that would benefit such persons meeting the criteria of the corporation, foundation, trust or other entity; and “(5) To create an educational trust fund to endow scholarships, grants or loans for purposes including but not limited to the evaluation of and development of personal education plans, prekindergarten program participation, after-school program participation, tutoring, participation in remedial programs or individual enrichment programs, computer training programs, SAT/ACT or other examination preparation programs, and participation in technical training, vocational, GED, college or adult educational programs.
“h. The annual payments of Two Million, Five Hundred Thousand Dollars ($2,500,000.00) shall be paid directly from the [Monsanto corporations] to [the Monsanto] plaintiffs’ counsel and to the corporation, foundation, trust or other appropriate entity designated by [the Monsanto] plaintiffs’ counsel pursuant to paragraph 3.g. as follows:
“i. One Million Dollars ($1,000,-000.00) shall be paid to plaintiffs’ counsel for attorneys’ fees;
“ii. One Million Five Hundred Thousand Dollars ($1,500,000.00) shall be paid to the corporation, foundation, trust or other appropriate entity established or selected in accordance with paragraph 3.g. hereof for the purposes outlined in paragraph 3.g. hereof.”
Each of the Monsanto plaintiffs signed a retainer agreement providing for a 40% attorney fee; signed a settlement agreement specifying his or her share of the settlement, attorney fees, and expenses; and received and cashed his or her settlement check. The settlement agreement executed by each of the Monsanto plaintiffs acknowledged:
“I understand that these shares are shares of the total settlement net of the court-approved 40% attorneys’ fees and $15 million in costs and expenses (all in accordance with my retainer agreement and the settlement agreement).”
On September 12, 2003, the trial court entered an order approving the settlement agreement as “fair and reasonable, including the payment of attorney’s fees and expenses as set forth in the Settlement Agreement.” The settlement agreement was incorporated as a part of the final judgment, which provided that the trial court “retained] continuing jurisdiction of this matter for the purpose of enforcing the Settlement Agreement.” (Emphasis added.) No appeals were taken from the judgment.
In 2004, Stewart and Kasowitz received communications on behalf of Sarah Avery, one of the Monsanto plaintiffs, stating her intent to file a class action to challenge the attorney fee and costs awarded in the settlement of the Monsanto litigation. Stewart and Kasowitz filed a motion requesting that the trial court enjoin Avery and any other Monsanto plaintiff from filing an independent action challenging the settlement agreement. On October 29, 2004, the trial court entered an order that “reaf- *842 fírm[ed] that the taxing of costs [and expenses] in the amount of $15 million, and the award of 40% of the recovery (after costs and expenses) as attorneys’ fees, was fair and reasonable” and that enjoined Avery and “all other persons ... from taking any action to interfere with the terms of the Settlement Agreement.” Avery filed a motion to clarify or, alternatively, to rescind the October 29 order, arguing that Stewart and Kasowitz had “improperly ‘double-dipped’ ” because, Avery said, Stewart and Kasowitz “deducted a 40% contingent fee from the $300 million settlement, and then deducted an additional 40% fee from each individual Plaintiffs award.” On December 15, 2004, the trial court entered an order denying Avery’s motion and finding that a 40% attorney fee in the Monsanto litigation was reasonable pursuant to the 12 criteria this Court enumerated in Pharmacia Corp. v. McGowan, 915 So.2d 549, 552-53 (Ala.2004) (quoting Van Schaack v. AmSouth Bank, N.A., 530 So.2d 740, 749 (Ala.1988)).
A. The First Action
On April 15, 2010, Bates and Joyner, both original Monsanto plaintiffs, filed a complaint against Stewart, the Foundation, and fictitiously named defendants in the Etowah Circuit Court. The complaint alleged, in pertinent part, that “[t]he Abernathy Trust Foundation is a trust organized under the laws of the State of Alabama” and, “[u]pon information and belief,” that “Stewart and Defendants A-Z created a trust known as The Abernathy Trust Foundation and/or Defendants 1-10.”[2] Bates and Joyner sought an accounting of the Abernathy trust pursuant to § 19-3B-205(a), Ala.Code 1975, which states, in pertinent part:
“A trustee may file an accounting of the trustee’s administration of a trust in court at any time and seek a partial or final settlement thereof or, upon petition of an interested party, a court may order a trustee to render an accounting of the trustee’s administration of a trust and require a partial or final settlement thereof....”
(Emphasis added.) Bates and Joyner further alleged that they are “interested parties” under the statute and demanded an accounting of the Abernathy trust. Bates and Joyner attached as exhibits to the complaint the settlement agreement in the Monsanto litigation and the trial court’s 2003 order approving the settlement. Bates and Joyner also sought an accounting of the use of the settlement funds from the Monsanto litigation.
On May 17, 2010, Stewart and the Foundation filed a motion to dismiss the complaint, alleging that Bates and Joyner were attempting to reopen a court-approved settlement, that the Abernathy trust was “created under New York law” and, they argued, “therefore is not governed by the Alabama Code.” In their motion, Stewart and the Foundation sought to have the complaint dismissed pursuant to Rule 12(b)(1), Ala. R. Civ. P. (“lack of jurisdiction over the subject matter”), and Rule 12(b)(6) (“failure to state a claim upon which relief can be granted”). Stewart and the Foundation attached as exhibits to their motion the settlement agreement in the Monsanto litigation, the *843 2003 order approving the settlement, and the two 2004 orders entered by the trial court in the Monsanto litigation.
On May 18, Bates and Joyner filed a motion to convert Stewart and the Foundation’s motion to dismiss into a motion for a summary judgment or, alternatively, to deny the motion. Bates and Joyner filed their motion to convert because, they said, in their motion to dismiss Stewart and the Foundation had asserted factual matters not asserted in the complaint, i.e., that the Abernathy trust was created under New York law and that $21 million had been used to fund the trust. On May 24, the trial court entered an order setting a scheduling conference and a hearing on all pending motions on August 2. On June 17, Bates and Joyner filed a supplemental response to Stewart and the Foundation’s motion to dismiss. On July 29, Stewart and the Foundation filed a response in opposition to the motion to convert their motion to a summary-judgment motion. On July 30, Bates and Joyner moved to strike the response. The trial court did not rule on the motion to strike before the hearing set for August 2, which took place as scheduled.
On August 2, after hearing arguments from the parties, the trial court established a briefing schedule on “all relevant issues including, but not limited to, the question of venue.” On August 25, Stewart and the Foundation filed an amended motion to dismiss and a supporting memorandum brief. Stewart and the Foundation urged the trial court to dismiss the complaint because, they argued, the circuit court in the Monsanto litigation retained continuing jurisdiction over the settlement, making jurisdiction exclusive in Calhoun County.[3] Alternatively, they argued, “at a minimum, this action is due to be transferred to Calhoun County.” Stewart and the Foundation continued to argue that the action should be dismissed for lack of subject-matter jurisdiction, but they also argued, in the alternative, that the action should be transferred to the Calhoun Circuit Court because, they alleged, “venue for an action [for an accounting of the Abernathy trust] brought in this state lies exclusively in Calhoun County pursuant to § 19-3B-204(a)(ii) and (iii),” Ala.Code 1975. Section 19-3B-204(a) states:
“Except as otherwise provided in subsection (b), venue for actions and proceedings involving a trust is proper ... (ii) in the county of this state where the trust has its principal place of administration; or (iii) in the case of a trust whose principal place of administration is in a jurisdiction other than this state, in the county where the settlor resided at the creation of the trust....”
In support of the amended motion to dismiss, Stewart and the Foundation submitted the affidavit of Donald W. Stewart in which he stated that he “established the Abernathy Trust as set forth in the trust document attached hereto as Exhibit B.” We note, however, that the record on appeal does not contain Exhibit B to Stewart’s affidavit or any document that purports to be the trust document.
On September 10, Bates and Joyner filed a first amended complaint in which they added additional defendants and causes of action. They continued to request an accounting of the settlement proceeds in addition to an accounting of the Abernathy trust pursuant to § 19-3B-205, and they alleged that “[t]he Abernathy Trust Foundation is a trust organized under the laws of the State of New York and funded by proceeds from the settlement *844 funds” in the Monsanto litigation. Bates and Joyner also filed on September 10 their memorandum in opposition to Stewart and the Foundation’s amended motion to dismiss. On September 16, Stewart and the Foundation filed a response in support of their amended motion to dismiss.
On September 20, Shaun Elston, Donna Allen, and Tara Hunley, all of whom alleged that they are the mothers of minor children who are beneficiaries of the Abernathy trust and whose 2010 checks did not arrive as scheduled (hereinafter referred to as “the intervenors”), moved to intervene in the first action. The intervenors attached a proposed complaint in intervention in which they alleged, in pertinent part:
“11. Shaun Elston, as Mother and Next Friend of Fernando Forbes and Deangelo Forbes, contacted the office of Donald W. Stewart on September 14, 2010 to inquire about the checks to her children. She was advised that the money in the Abernathy Trust had been ‘frozen’ because of Mr. Bates and Mr. Joyner. Ms. Elston asked but was not provided with any paperwork showing that the money had been ‘frozen.’
“12. Donna Allen, as Mother and Next Friend of Loujuan Allen and Ta-couya Allen, contacted the office of Donald W. Stewart on September 14, 2010 after she did not receive their checks. She was advised that the checks were ‘on hold’ because of the lawsuit filed by Bates and Joyner.
“13. Tara Hunley, Mother and Next Friend of Joshua Reynolds, contacted the office of Donald W. Stewart on September 16, 2010. She was told that the trust fund had been ‘put on hold’ because of the lawsuit filed by George Bates and another man. She was told that the lawsuit was placed against the Abernathy Trust Fund, and that the trust had put a hold on all funds because of the suit. She was further advised that the hold would be released Svhen a judge settles the case or the lawsuit is dropped.’ Finally, when Ms. Hunley asked why the people who were expecting checks for their minor children were not notified that the trust fund was on hold prior to the checks not being mailed this year, she was told by the employee of Mr. Stewart’s office that ‘they did not have an answer to that question.” ’
On September 21, Bates and Joyner filed a motion for an emergency hearing to appoint a receiver for the Abernathy trust or for other relief. That motion alleged, for the first time, that, “[djespite requests to the current trustees by the beneficiaries for accounting or even for copies of the Abernathy Trust itself, the current trustees have refused to provide to the beneficiaries any accounting or even a copy of the Abernathy Trust.” (Emphasis added.) A portion of the relief Bates and Joyner requested was that the court require Stewart and the Foundation to “[m]ake an immediate accounting to the [Monsanto] Plaintiffs and Intervenors of the Abernathy Trust assets, including, but not limited to, the immediate production of a copy of the terms and conditions of the said Abernathy Trust.” (Emphasis added.)
On the following day, September 22, the trial court entered an order granting Stewart and the Foundation’s motion to dismiss. The order did not state the trial court’s reason for dismissing the action, and there is no indication in the order that the trial court considered the motion for an emergency hearing, which alleged that Stewart and the Foundation had refused to provide Bates and Joyner with a copy of the trust document. Bates and Joyner appealed from the judgment of dismissal.
*845 B. The Second Action and the Mandamus Petition
On April 1, 2011, the Adams plaintiffs, all of whom were Monsanto plaintiffs, and Kathy Faye Wynn[4] filed their motion to intervene, seeking to reopen the 2003 judgment in that case and requesting, among other things, an accounting of the funds in settlement of the Monsanto litigation, including the attorney fees awarded and the distributions from the Abernathy trust. The Adams plaintiffs alleged that the trial court had never determined whether Sabrina Abernathy or her attorneys could “fairly and adequately” represent the Monsanto plaintiffs’ interests and had never held a hearing on the reasonableness of the attorney fees awarded in the Monsanto litigation. The Adams plaintiffs also alleged that the retainer agreements executed by the Monsanto plaintiffs are void because of the following provision:
“[I]n the event the attorneys negotiate and recommend acceptance of what the attorneys, in their sole discretion, consider to be a fair and equitable settlement of the claim for which the attorneys are hereby employed, and if the client refuses to accept said settlement, the attorneys shall thereupon have the right to withdraw from representation of said client and the client shall be indebted to said attorneys for the amount of the attorneys’ fees and costs and expenses hereinabove provided based upon the offer of settlement recommended by the attorneys.”
The Adams plaintiffs asked the trial court to order an accounting of the settlement proceeds and of the Abernathy trust, to hold a hearing to review the reasonableness of the attorney fee in the Monsanto litigation, to appoint a special master to review claims for benefits from the Abernathy trust that had been denied by the Foundation, and to remove Donald Stewart as trustee of the Abernathy trust. Specifically, as to the attorney fee, the Adams plaintiffs asked the trial court to require Stewart and Kasowitz to submit an application for an attorney fee or to repay the attorney fee they had already received, to allow the Adams plaintiffs to take discovery regarding the fee, and to schedule a public hearing on the reasonableness of the requested attorney fee. The Adams plaintiffs also asked the trial court to set aside the court’s order in the Monsanto litigation awarding Stewart and Kasowitz $15 million in expenses.
On August 22, 2011, the trial court entered an order addressing the Adams plaintiffs’ motion. As to the trial court’s jurisdiction over the motion, the trial court stated:
“[Bjased on the applicable law, the pleadings, the April 27, 2011, hearing, and the facts of this case, the Court makes the following findings of fact:
“1. This Court finds that the property claims between the Litigants and the Defendants have been ascertained and adjudged and the agreed upon amounts have been disbursed to the [Monsanto] Plaintiffs.
“2. This Court finds that the personal injury claims between the [Monsanto] Plaintiffs and the Defendants have been ascertained and adjudged and the agreed upon amounts have been disbursed to the [Monsanto] Plaintiffs.
“3. This Court finds that the funds paid and funds to be paid into the Abernathy Trust Fund have been ascertained and adjudged.
“4. This Court finds that the [Monsanto] Plaintiffs’ claims for payments *846 and the denial of claims for payments from the Abernathy Trust Fund have not been determined by the Court and in fact are being determined on an ongoing basis by the Abernathy Trust Fund Board.
“This Court finds that the determinations of the Abernathy Trust Board are not final judgments and are subject to review by this Court.
“It is hereby ORDERED, ADJUDGED, AND DECREED as follows:
“1. The property settlement portion of the previous orders entered in this case is a final judgment and the appeal time has expired.
“2. The personal injury portion of the previous orders entered in this case is a final judgment and the appeal time has expired.
“3. The Trust Fund portion of the previous orders entered in this case is a final judgment and the appeal time has expired.
“4. The awards or denial of awards from the Abernathy Trust Fund are not final judgments. Any [Monsanto] Plaintiff may file a motion for judicial review of his or her award or denial of award from the Trust Fund Board.
“5. A hearing regarding the matter of the method of allocation used by the Abernathy Trust Fund Board in determining the granting or denying of claims shall be held on September 9, 2011 at 1:30 p.m. in courtroom 250. The purpose of the hearing is for the Court to be educated on the formula used to issue awards and the process of the same. [Monsanto] Plaintiffs’ counsel shall present testimony and documentation in support of their method of allocation.”
As to the trial court’s jurisdiction to review the attorney-fee award, the trial court stated:
“[A]fter hearing and after reviewing all pleadings, all court orders, the court file, and after considering all applicable law, this Court makes the following findings of fact:
“1. The Court has equitable and inherent authority over the global settlement and over the parties and attorneys.
“2. The Court has equitable and inherent authority to review the contingency fee contracts of the [Monsanto] Plaintiffs and the attorneys.
“3. The Court has retained jurisdiction over this case for the purpose of the enforcement of the settlement agreement and the judgment.
“4. The Court finds that the Inter-veners’ allegations contained in the request for relief regarding the reasonableness of attorney fees to be extraordinary and exceptional circumstances, which if proven would be an extreme injustice.
“5. The Court finds that the Inter-veners’ request for relief should be treated as a request for relief from judgment under the Alabama Rules of Civil Procedure, Rule 60(b)(6).
“6. The Court finds that each [Monsanto] Plaintiff should be served with notification of this action and given an opportunity to be heard, with or without counsel, or to waive their right to participate in said hearing.
“It is hereby ORDERED, ADJUDGED, AND DECREED as follows:
“1. The attorneys shall each submit to the Court for review a proposed notification of right to hearing and a waiver of right to hearing on the issue of reasonableness of attorney fees to be served to all [Monsanto] plaintiffs. Said submission shall be filed on September 9, 2011.
“2. The [Monsanto] Plaintiffs’ attorneys shall submit any known address *847 changes to the list of all [Monsanto] plaintiffs and addresses previously filed on September 16, 2003 for service of said notification to the Circuit Clerk of Etowah County. Said submission shall be filed on September 9, 2011.
“3. The Clerk of Court of Etowah County shall cause the notification to be served to all last known addresses on file of each [Monsanto] Plaintiff.
“4. The costs of said notification shall be paid from the Abernathy Trust Fund pending further orders of the Court. Costs shall include postage, supplies, and temporary staff, if necessary, to accomplish the assignment.
“5. A hearing date shall be set by separate order upon completion of service of all [Monsanto] Plaintiffs.”
As to the issues regarding the Abernathy trust, the trial court stated:
“1. The Court finds that the Inter-veners’ request for freezing of the trust assets is appropriate pending the completion of the audit and the hearing on the reasonableness of the attorney fees. Therefore, there is no need for a constructive trust.
“2. The Court finds that the Inter-veners’ request for removal of Donald Stewart as trust administrator is without any evidence that Mr. Stewart has mishandled the trust.
“3. The Court finds that there is no need for a Special Master as the Court shall hear all matters necessary.
“It is hereby ORDERED, ADJUDGED, AND DECREED as follows:
“1. The Interveners’ request for removal of Donald Stewart from the administration of the Trust is hereby denied.
“2. The assets of the Abernathy Trust are hereby frozen. The Court orders all payments to minors to continue as scheduled, if any, and any unscheduled payments shall not be made until further orders of this Court.
“3. The deposits expected no later than August 26, 2011, including amounts allocated for attorney fees, shall be deposited and shall not be distributed until further orders of this Court.
“4. The Interveners’ requests for an appointment of a Special Master and creation of a constructive trust are hereby denied.”
Moreover, the trial court ordered that certain records of the Abernathy trust be unsealed. Those records included an accounting firm’s report that contained the names of the Monsanto plaintiffs and their corresponding PCB-related medical or educational (e.g., learning-disability) problems, as well as the payments they had received from the Abernathy trust.
Stewart and Kasowitz filed a motion to vacate the August 22 order. The trial court orally denied that motion at a hearing held on September 9. The trial court stated that the process of mailing the notices to the Monsanto plaintiffs would begin on September 13. The trial court agreed to allow Stewart and Kasowitz to redact certain medical information from the records on file with the court so that the information would contain the names of adults who had received payments from the Abernathy trust for PCB-related medical or educational problems, but not their specific conditions or the amount they received. The trial court directed Stewart and Ka-sowitz to provide this information by September 13. Stewart and Kasowitz appealed from the August 22 and September 9 orders on the basis that the trial court had granted injunctive relief to the Adams plaintiffs. Stewart and Kasowitz also filed a petition for a writ of mandamus asking this Court to require the trial court to vacate its August 22 and September 9 *848 orders and to stay further proceedings in the trial court pending the outcome of the mandamus proceeding. This Court granted the motion for a stay and ordered answer and briefs.
II. Standards of Review

A.Appeal in the First Action (No. 1100063)

In Pontius v. State Farm Mutual Automobile Insurance Co., 915 So.2d 557, 563 (Ala.2005), this Court stated the standard of review applicable to a ruling on a motion to dismiss an action for a lack of subject-matter jurisdiction:
“In Newman v. Savas, 878 So.2d 1147 (Ala.2003), this Court set out the standard of review of a ruling on a motion to dismiss for lack of subject-matter jurisdiction:
“ ‘A ruling on a motion to dismiss is reviewed without a presumption of correctness. Nance v. Matthews, 622 So.2d 297, 299 (Ala.1993). This Court must accept the allegations of the complaint as true. Creola Land Dev., Inc. v. Bentbrooke Housing, L.L.C., 828 So.2d 285, 288 (Ala.2002). Furthermore, in reviewing a ruling on a motion to dismiss we will not consider whether the pleader will ultimately prevail but whether the pleader may possibly prevail. Nance, 622 So.2d at 299.’
“878 So.2d at 1148-49.”
See also Ex parte Alabama Dep’t of Transp., 978 So.2d 17, 21 (Ala.2007).

B.Appeal in the Second Action (No. 1101156)

When this Court reviews the grant or denial of a preliminary injunction, “ ‘[w]e review the [trial] [cjourt’s legal rulings de novo and its ultimate decision to issue the preliminary injunction for [an excess] of discretion.’ ” Holiday Isle, LLC v. Adkins, 12 So.3d 1173, 1176 (Ala.2008) (quoting Gonzales v. 0 Centro Espirita Beneficente Union do Vegetal, 546 U.S. 418, 428, 126 S.Ct. 1211, 163 L.Ed.2d 1017, (2006)).
“A preliminary injunction should be issued only when the party seeking an injunction demonstrates:
“ ‘ “(1) that without the injunction the [party] would suffer irreparable injury; (2) that the [party] has no adequate remedy at law; (3) that the [party] has at least a reasonable chance of success on the ultimate merits of his case; and (4) that the hardship imposed on the [party opposing the preliminary injunction] by the injunction would not unreasonably outweigh the benefit accruing to the [party seeking the injunction].” ’ ”
Holiday Isle, 12 So.3d at 1176 (quoting Ormco Corp. v. Johns, 869 So.2d 1109, 1113 (Ala.2003), quoting in turn Perley v. Tapscan, Inc., 646 So.2d 585, 587 (Ala.1994) (alterations in Holiday Isle)).

C.Mandamus Petition (No. 11014.52)

“ ‘Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.’ ”
Ex parte Perfection Siding, Inc., 882 So.2d 307, 309-10 (Ala.2003) (quoting Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995)).
“ ‘A petition for the writ of mandamus is a proper method for attacking the grant of a Rule 60(b) motion.’ Ex parte A & B Transp., Inc., 8 So.3d 924, 931 (Ala.2007). ‘In general, the decision whether to grant or to deny a post- *849 judgment motion filed pursuant to ... Rule 60 is within the sound discretion of the trial court, and the exercise of that discretion will not be disturbed ... unless the trial court [exceeded] its discretion.’ Comalander v. Spottswood, 846 So.2d 1086, 1090 (Ala.2002). However, ‘[a] party seeking relief must both allege and prove one of the grounds set forth in Rule 60 in order to be granted relief under that rule.’ Ex parte American Res. Ins. Co., 663 So.2d 932, 936 (Ala.1995). Thus, where a ‘Rule 60(b) motion offer[s] no proper basis for granting relief from the judgment, ... the trial court’s granting of that motion [exceeds its] discretion.’ Ex parte Alfa Mut. Gen. Ins. Co., 681 So.2d 1047, 1050 (Ala.1996).”
Ex parte Wallace, Jordan, Ratliff & Brandt, L.L.C., 29 So.3d 175, 177-78 (Ala.2009).
III. Analysis
A. The First Action
We first address whether the trial court erred in granting Stewart and the Foundation’s motion to dismiss pursuant to Rule 12(b)(1), Ala. R. Civ. P. Bates and Joyner contend that because the Etowah Circuit Court had jurisdiction over the Monsanto litigation and entered all orders in the Monsanto litigation in Etowah County, the Etowah Circuit Court has jurisdiction over all matters related to the Abernathy trust. Moreover, Bates and Joyner argue, their complaint was properly filed as an action independent of the Monsanto litigation because the causes of action they asserted arose after the Monsanto litigation had been concluded. Bates and Joyner also argue that the trial court’s retention of jurisdiction in the Monsanto litigation to enforce the settlement agreement did not preclude them from filing a complaint for an accounting of the Abernathy trust in the Etowah Circuit Court.
Stewart and the Foundation argue that when a trial court presides over the settlement of a case and reserves continuing jurisdiction over the settlement, as the trial court did in the Monsanto litigation, independent actions challenging the settlement must be dismissed for lack of jurisdiction. Stewart and the Foundation contend that in filing the first action Bates and Joyner attempted to file such an impermissible independent action outside the Monsanto litigation. Relying on Ex parte Liberty National Life Insurance Co., 888 So.2d 478 (Ala.2003), and Solomon v. Liberty National Life Insurance Co., 953 So.2d 1211 (Ala.2006), Stewart and the Foundation argue that the trial court properly dismissed the first action for lack of subject-matter jurisdiction.
In Liberty National, the plaintiffs sued Liberty National in the Choctaw Circuit Court. All the plaintiffs were members of a class certified in Adams v. Robertson, 676 So.2d 1265 (Ala.1995), a class action filed in the Barbour Circuit Court that involved over 400,000 plaintiffs who had purchased cancer insurance from Liberty National Life Insurance Company. The case was settled, the trial court approved a modified settlement, and the judgment was affirmed by this Court in Robertson. The trial court’s order contained the following provision in which the trial court retained continuing jurisdiction over matters “relating to” the Robertson settlement and the enforcement of that settlement.
“[The Barbour Circuit Court retained] continuing jurisdiction over all matters relating to the Settlement or the consummation of the Settlement; the validity of the Settlement; the construction and enforcement of the Settlement and any orders entered pursuant thereto; ... and all other matters pertaining to *850 the Settlement or its implementation and enforcement.”
Robertson, 676 So.2d at 1307 (quoting the trial court’s order attached to opinion). This Court concluded that the Choctaw County action involved matters “relating to” the Robertson settlement and its enforcement and that the Choctaw County action sought to attack several aspects of the Robertson settlement that had been litigated at a fairness hearing and that had been approved by the trial court. The Court held as follows:
“This type of collateral attack is not permitted. The boundary lines between courts of concurrent jurisdiction must be preserved. ‘ “ ‘[W]here two courts have equal and concurrent jurisdiction, the court that first commences the exercise of its jurisdiction in a matter has the preference and is not to be obstructed in the legitimate exercise of its powers by a court of coordinate jurisdiction.’ ” ’ Ex parte First Nat’l Bank of Jasper, 717 So.2d 342, 350 (Ala.1997) (quoting Ex parte Liberty Nat’l Life Ins. Co., 631 So.2d 865, 867 (Ala.1993), quoting in turn Ex parte State ex rel. Ussery, 285 Ala. 279, 281, 231 So.2d 314, 315 (1970)).”
Liberty National, 888 So.2d at 481. The Liberty National Court concluded that the Choctaw County action was an attempt “to attack collaterally in another circuit court portions of the Robertson settlement,” id., and held that the Choctaw Circuit Court did not have jurisdiction to hear the plaintiffs’ action, which was in essence an attack on the Robertson settlement.
In Solomon, the same plaintiffs who filed the Choctaw County action filed an identical action in the Barbour Circuit Court. The trial court consolidated the newly filed action with the Robertson action, designated these plaintiffs as a subclass in Robertson, and entered a final judgment approving a settlement of the subclass’s claims. This Court held:
“[T]he trial court’s sua sponte ‘consolidation’ order did not change the status of case no. CV-03-137 [the newly filed action] from an independent action to a properly brought action within the Barbour Circuit Court’s continuing jurisdiction under case no. CV-92-021 [Robertson ]. Consequently, the trial court did not have subject-matter jurisdiction over case no. CV-03-137, and its order of consolidation was void — indeed, any action it took in case no. CV-03-137, other than a dismissal of the claims, was void.”
953 So.2d at 1222.
After reviewing Ex parte Liberty National and Solomon, as well as the other authority cited by Stewart and the Foundation, we conclude that the reservation of continuing jurisdiction to enforce the settlement agreement by the trial court in the Monsanto litigation precludes the claims added by Bates and Joyner in their first amended complaint and their request for an accounting of the settlement proceeds, but it does not preclude their request for an accounting of the Abernathy trust.
This Court discussed subject-matter jurisdiction in Ex parte Seymour, 946 So.2d 536 (Ala.2006):
“Jurisdiction is ‘[a] court’s power to decide a case or issue a decree.’ Black’s Law Dictionary 867 (8th ed.2004). Subject-matter jurisdiction concerns a court’s power to decide certain types of cases. Woolf v. McGaugh, 175 Ala. 299, 303, 57 So. 754, 755 (1911) (‘ “By jurisdiction over the subject-matter is meant the nature of the cause of action and of the relief sought.”’ (quoting Cooper v. Reynolds, 77 U.S. (10 Wall.) 308, 316, 19 L.Ed. 931, (1870))). That power is derived from the Alabama Constitution *851 and the Alabama Code. See United States v. Cotton, 535 U.S. 625, 680-31, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002) (subject-matter jurisdiction refers to a court’s ‘statutory or constitutional power’ to adjudicate a case).”
946 So.2d at 538.
In Alabama, a circuit court “shall exercise general jurisdiction in all cases except as may be otherwise provided by law.” § 142(b), Ala. Const, of 1901 (Off.Re-comp.). Section 19-3B-203, Ala.Code 1975, provides that, generally, “the circuit court has exclusive jurisdiction of proceedings in this state brought by a trustee or beneficiary concerning the administration of a trust.” Pursuant to § 19-3B-205(a), Ala.Code 1975, “upon petition of an interested party, a court may order a trustee to render an accounting of the trustee’s administration of a trust....” As beneficiaries of the Abernathy trust, Bates and Joyner clearly are interested parties who had the right to bring an action seeking an accounting of the Abernathy trust. We conclude, therefore, that the trial court had subject-matter jurisdiction over the request for an accounting of the Abernathy trust; its dismissal of that claim was error.
The judgment of dismissal is hereby reversed as to Bates and Joyner’s request for an accounting of the Abernathy trust, and the case is remanded for further proceedings consistent with this opinion. As to the other claims alleged by Bates and Joyner concerning matters other than the accounting of the Abernathy trust, those claims must be brought in the Monsanto litigation, and we affirm the Etowah Circuit Court’s dismissal of the case as to all claims other than the accounting of the Abernathy trust.
Because we have resolved the appeal in the first action based on Rule 12(b)(1), we pretermit the parties’ other arguments as to this appeal.
B. The Second Action
The Adams plaintiffs argue that the second action should be dismissed because, they argue, Stewart and Kasowitz have appealed from a nonfinal judgment. Stewart and Kasowitz argue that the trial court’s orders of August 22 and September 9 are injunctive in nature and that, therefore, their appeal is proper. This Court addressed a similar order and appeal in Kappa Sigma Fraternity v. Price-Williams, 40 So.3d 683, 689-90 (Ala.2009). The Court in Kappa Sigma noted that an injunction is defined as “ ‘[a] court order commanding or preventing an action.’ ” (Quoting Black’s Law Dictionary 788 (7th ed.1999).) Because the trial court’s order in Kappa Sigma commanded the parties to take specific action, this Court held that it had jurisdiction to consider the appeal, even though the order appealed from was not a final judgment.
The trial court’s August 22 and September 9 orders commanded the trustee of the Abernathy trust to take specific action — to stop making certain payments contemplated by the trust and to release certain information. Because the August 22 and September 9 orders clearly command the trustee to take action, we conclude that it is injunctive in nature. See Dawkins v. Walker, 794 So.2d 333, 335 (Ala.2001). Rule 4(a)(1)(A), Ala. R.App. P., expressly permits appeals from orders “granting, continuing, modifying, refusing, or dissolving an injunction, or refusing to dissolve or to modify an injunction.” Therefore, this Court has jurisdiction to consider the appeal in the second action even though the August 22 and September 9 orders are not final judgments.
Nevertheless, our resolution of the petition for a writ of mandamus makes the issues raised in the appeal in the second *852 action moot, and that appeal is therefore due to be dismissed.
C. The Mandamus Petition
1. Order of August 22, 2011
Stewart and Kasowitz first ask this Court to direct the trial court to vacate its order of August 22, 2011. They contend that the reasonableness of the attorney fee awarded in the Monsanto litigation was settled in the final judgment in that litigation entered in 2003. Stewart and Kasow-itz say that despite the Adams plaintiffs’ efforts to characterize their argument differently, the Adams plaintiffs are challenging a final judgment entered in 2003, a judgment the trial court had no authority to reopen. In Helms v. Helms’ Kennels, Inc., 646 So.2d 1343, 1347 (Ala.1994), this Court quoted the following from United States v. Cirami, 563 F.2d 26, 33 (2d Cir. 1977):
“ ‘[Ljitigation must end somewhere, and we reiterate our firm belief that courts should not encourage the reopening of final judgments or casually permit the relitigation of litigated issues out of a friendliness to claims of unfortunate failures to put in one’s best case.’ ”
Stewart and Kasowitz contend that neither Rule 60(b), Ala. R. Civ. P., nor the trial court’s “inherent authority” allows the trial court to reopen the Monsanto litigation. Rule 60(b) states, in pertinent part:
“On motion and upon such terms as are just, the court may relieve a party or the party’s legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence ...; (3) fraud ...; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged ...; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3), not more than four (4) months after the judgment, order, or proceeding was entered or taken. A motion under this subdivision does not affect the finality of a judgment or suspend its operation.”
(Emphasis added.) The Adams plaintiffs argue that the trial court properly reopened the judgment pursuant to Rule 60(b)(6) because, they say, they proved the existence of “extraordinary circumstances imposing extreme injustice.” Their argument is based on their contention that they were misled or coerced into signing the settlement agreements in the Monsanto litigation.
Stewart and Kasowitz contend that the Adams plaintiffs’ argument that they were coerced or misled into signing the settlement agreements is unsupported, is without merit, and is untimely because it is an attack on a final judgment entered eight years before the Adams’ plaintiffs filed the second action. Stewart and Kasowitz deny that the Adams plaintiffs were misled or coerced into signing the settlement agreements, but they argue that, even if those things were true, no provision of Rule 60(b) is available to the Adams plaintiffs because of the clear time limitations in Rule 60(b). If the Adams plaintiffs’ contention that they were coerced or misled is interpreted as a motion brought under subsections (1), (2), or (3) of Rule 60(b), a four-month deadline controls, and any challenge under Rule 60(b)(6) must be brought within a “reasonable time.” According to Stewart and Kasowitz, the Adams plaintiffs did not file their motion within a reasonable time or show any extraordinary circumstances that would have justified reopening the 2003 judgment.
Rule 60(b) requires that any Rule 60(b) motion must be brought within a “reasonable time.” Stewart and Kasowitz main *853 tain that the time limit within which the Adams plaintiffs could have filed a Rule 60(b) motion has long since been exceeded. Stewart and Kasowitz argue that the interest in the finality of a judgment, “the reason for delay” in filing a Rule 60(b)(6) motion, “the practical ability to learn earlier of the grounds” upon which extraordinary relief is sought, and the prejudice to the other parties all weigh against the Adams plaintiffs’ attempts to reopen the 2008 judgment. See Ex parte Hicks, 67 So.3d 877, 880 (Ala.2011).
Stewart and Kasowitz also argue that the trial court had no inherent authority to reopen the 2003 judgment. They recognize that the 2003 judgment reserves to the trial court the authority to oversee the enforcement of the settlement agreement; however, they argue, that authority did not allow the trial court to alter the judgment or to modify vested rights granted by the judgment, especially not eight years after the judgment was entered. Helms, 646 So.2d at 1347. Stewart and Kasowitz contend that reopening the judgment for a review of the attorney fee and expenses, as well as freezing payments the trustee of the Abernathy trust was obligated to make for medical and educational expenses, is an improper modification to the 2003 judgment.
Finally, Stewart and Kasowitz maintain that this Court should direct the trial court to vacate that portion of its August 22 order unsealing certain records relating to the Abernathy trust, including an accounting firm’s report showing, among other things, the names of the beneficiaries of the Abernathy trust, the PCB-related illnesses, and the payments made from the Abernathy trust. Stewart and Kasowitz argue that unsealing those records will disclose to the public confidential medical and financial information relating to the Monsanto plaintiffs. Stewart and Kasow-itz also argue that the trial court improperly froze the distributions to be made from the Abernathy trust.
It is clear to this Court that the trial court lacked the authority under Rule 60(b) to reopen the final 2003 judgment because the motion seeking to reopen it was brought far beyond a reasonable time. This Court has previously discussed the elements that are used to determine a reasonable time for purposes of a Rule 60(b) motion:
“ ‘What constitutes a “reasonable time” depends on the facts of each case, taking into consideration the interest of finality, the reason for the delay, the practical ability to learn earlier of the grounds relied upon, and the prejudice to other parties. Adams v. Farlow, 516 So.2d 528 (Ala.1987), cert. denied, 485 U.S. 1010, 108 S.Ct. 1477, 99 L.Ed.2d 705 (1988). In addition, the doctrine of laches, which denies equitable relief to one guilty of unconscionable delay in asserting a claim, applies to Rule 60(b) motions. Waldrop v. Waldrop, 395 So.2d 62 (Ala.1981).’
“Ex parte W.J., 622 So.2d 358, 361 (Ala.1993).”
Hicks, 67 So.3d at 880. After reviewing the facts of this case and taking into consideration the elements that determine a reasonable time for purposes of a Rule 60(b) motion, we conclude that the Adams plaintiffs did not file their motion within a reasonable time. Moreover, this Court has found no cases in which a period of more than eight years for the filing of a Rule 60(b) motion was deemed reasonable. Therefore, we conclude that the trial court exceeded its discretion in reopening the 2003 judgment. Because we hold that the Adams plaintiffs did not file their Rule 60(b) motion within a reasonable time, we need not reach their argument in that *854 motion that they proved extraordinary circumstances that justified their attempt to reopen the judgment.
The Adams plaintiffs also argue that the trial court properly reopened the 2003 judgment because the trial court that presided over the Monsanto litigation did not hold a fairness hearing when it entered the judgment in 2003 and because the attorney-fee award in the Monsanto litigation was approved before the trial court took into account all the factors this Court has held should be considered in determining the reasonableness of an attorney fee. Stewart and Kasowitz point out that the Adams plaintiffs are asking that the court apply procedures applicable only in a class-action setting and that the Monsanto litigation was never a class action.[5] The class-action requirements in Rule 23, Ala. R. Civ. P., they argue, are not applicable. We agree that there is no requirement in a case that is not a class action to hold a “fairness hearing” or to determine whether the named plaintiff adequately represented the other parties in the case. Those concepts are limited to class actions. This Court has identified 12 criteria a trial court should consider when deciding whether an attorney fee is reasonable. See Pharmacia Corp., 915 So.2d at 552-53. Even though the trial court did not discuss the elements of the attorney fee approved in 2003, the court held that the attorney fee was reasonable and approved the portion of the settlement agreement awarding a 40% attorney fee to Stewart and Kasow-itz. In 2004, the trial court reconfirmed its holding that the attorney fees were reasonable. It is far too late to challenge that holding now.
The trial court in the second action also relied on its inherent authority derived from the continuing jurisdiction to enforce the settlement agreement reserved by the trial court in the 2003 judgment. However, the sole purpose of that continuing jurisdiction — to enforce the settlement agreement — did not give the trial court authority beyond enforcing the settlement. The trial court has the authority under its continuing jurisdiction to examine the Abernathy trust to ensure that the trust was established according to the guidelines set out in the settlement agreement, but no more. Any efforts by the Adams plaintiffs to obtain an accounting of the administration of the trust must be brought under § 19-3B-205, subject to the venue provisions in § 19-3B-204.
The trial court clearly exceeded its discretion in its August 22 order when it reopened a final judgment entered more than eight years before, scheduled a hearing on the reasonableness of the attorney-fee award in that 2003 judgment, ordered that notice of the hearing on the attorney fees be mailed to all the Monsanto plaintiffs, delved into the administration of the Abernathy trust for the purpose of reviewing claims already paid or denied, ordered confidential medical and financial information to be released to the public, and froze distributions from the Abernathy trust. To the extent the trial court’s order seeks to examine the trust documents to ensure that the Abernathy trust was established in accordance with the terms of the settlement agreement, however, the order was within the trial court’s authority to enforce the terms of the settlement agreement.
We therefore grant Stewart and Kasow-itz’s petition for a writ of mandamus as to all portions of the August 22 order except that portion in which the trial court sought *855 to review the Abernathy trust documents to see if they comport with the terms of the settlement agreement, and we direct the trial court to vacate all other portions of its August 22 order.
2. Order of September 9, 2011
At the hearing on September 9, 2011, the trial court orally denied Stewart and Kasowitz’s motion to vacate the order of August 22 and their motion to stay the proceedings in the trial court pending an appeal. Because this Court has granted the requested relief by granting the petition for a writ of mandamus as to most portions of the August 22 order and has stayed the proceedings in the trial court pending the resolution of these appellate proceedings, we need not further address the September 9 order.
S. Distributions from the Abernathy Trust
Finally, this Court notes that in addition to the trial court’s order freezing certain distributions from the Abernathy trust, the intervenors in the first action alleged that Stewart and Kasowitz had stopped making distributions from the Abernathy trust. The Court takes notice that there are children and adults who are likely going without medical care or educational assistance while these cases have been in this Court. On remand of the first action in appeal no. 1100063 and upon the issuance of the writ of mandamus in case no. 1101452, both the trial court and Stewart and Kasowitz are directed to immediately lift any freeze of distributions from the Abernathy trust and to restore the processing of benefits to the eligible Monsanto plaintiffs with the utmost speed.
IV. Conclusion
As to the first action, we reverse the judgment of dismissal as to Bates and Joyner’s request for an accounting of the Abernathy trust; affirm the judgment of dismissal as to all other claims; and remand the case for further proceedings consistent with this opinion. As to the second action, we dismiss the appeal as moot. As to the mandamus petition, we grant the petition for a writ of mandamus as to all portions of the August 22 order except that portion that seeks a review of the Abernathy trust documents as compared to the terms of the settlement agreement, and we issue the writ. We also direct the trial court and Stewart and Kasowitz to immediately lift any freeze of distributions from the Abernathy trust.
1100063 — AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
1101452 — PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
1101456-APPEAL DISMISSED AS MOOT.
MALONE, C.J., and WOODALL, STUART, BOLIN, PARKER, SHAW, and WISE, JJ., concur.

. In January 2011, Judge Deborah Jones took office as a judge in the Calhoun Circuit Court, succeeding Judge Laird. The Chief Justice of this Court then appointed Judge Jones as a special judge in Etowah County to continue presiding over the Monsanto litigation.

. The terms "the Abernathy Trust," "the Abernathy Trust Fund," "the Abernathy Trust Foundation,” and "the Abernathy Trust Fund Board” are used interchangeably in briefs filed with this Court and in documents contained in the record. We cannot determine from the documents before us which of these terms is correct; therefore, we refer to the trust res as "the Abernathy trust” and to the entity administering the Abernathy trust as "the Foundation.” We have not changed the terms used in the documents we quote in this opinion.

. Stewart and the Foundation are referring to Etowah Circuit Court case no. CV-01-832, the original case transferred to the Etowah Circuit Court from the Calhoun Circuit Court.

. Wynn was later dismissed because she was not a Monsanto plaintiff.

. See Ex parte Monsanto Co., 862 So.2d 595, 599 (Ala.2003) (“The trial court consolidated the three actions; there are currently over 3,500 plaintiffs in the consolidated action. This case is not a class action.” (emphasis added)).