PER CURIAM.
Catherine S. Patterson (“the mother”) and Chad C. Crowe (“the father”) were divorced in 1994. The divorce judgment, among other things, ordered that the father pay child support of $250 per month beginning April 1, 1994. On March 19, 2001, the State, on behalf of the mother, filed a contempt petition against the father, alleging that he had faded to pay child support pursuant to the terms of the divorce judgment. Specifically, the mother asserted that as of March 19, 2001, the father owed principal child-support arrears of $9,559.32 and interest of $2,357.05.
On June 18, 2001, the parties entered into a settlement agreement whereby the father agreed to pay a child-support ar-rearage of $9,799.32 at the rate of $65 per month beginning July 2, 2001. Interest on the arrearage was $2,446.92, which would continue to accrue until the judgment was satisfied, as provided in § 8-8-10, Ala. Code 1975. The parties further agreed that the father had missed 40 child-support payments and that each missed payment represented a separate act of contempt. The father agreed to be incarcerated in the county jail for 5 days for each act of contempt — for a total of 200 days in jail— with the sentence to be suspended for a period of 2 years on the condition that all child-support payments were made on time each month. On June 22, 2001, the trial court ratified the parties’ settlement agreement and entered an order in accordance with the agreement. On that same day, the trial court issued an income-withholding order.
On November 30, 2001, the State, on behalf of the mother, moved to revoke the father’s suspended sentence, alleging that he had failed to pay child support in September and October 2001. The State sought an order requiring the father “to report to the Madison County Jail where the State would ask that he be required to serve his time on active work release. The State also prays for such other, further and different relief as to which it may be entitled.”
Following a hearing, the State moved to withdraw its motion to revoke, because the father was attempting to enlist in the United States Army and the State would pursue income withholding as a means to collect support. The trial court granted the motion on January 25, 2002.
On July 24, 2002, the State, on behalf of the mother, filed a second motion to re *365 voke the father’s suspended sentence, alleging that he had failed to make payments in accordance with the June 22, 2001, order and that the last payment received was $40 in December 2001.
Following a hearing, the trial court entered the following order on August 13, 2002:
“The [father] appeared in open court with counsel, David McDowell. Based on the admission of the [father] that he has violated the terms of his probation by failing to pay child support, this Court is reasonably satisfied that the [father] has violated the terms of his probation. Accordingly, the [father’s probation is revoked and the [father] is sentenced to 200 days in the Madison County Jail, suspended for one year on the condition that the [father] serve on the Madison County Work Release until such time as the [father] pays $12,370.32 in child support arrearage and $3,953.67 in interest. The [father] is to be released no later than August 13, 2003. In all other respects, the Court’s prior orders remain in full force and effect. This order is entered because no measure short of confinement will avoid depreciating the seriousness of the [father]’s violation. The [father] was advised of his right to appeal.”
On August 13, 2002, the father signed an “Order of Commitment to Jail,” which indicates that he is in the “custody” of the Madison County jail until he is discharged by the court.
The father appeals, arguing that the trial court exceeded its jurisdiction when it suspended his sentence of 200 days for criminal contempt upon the condition that he serve on work release until such time as he pays the arrearage and interest, but no longer than one year.[1] Specifically, he argues that work release is the same as incarceration. He further argues that § 12-11-30(5), Ala. Code 1975, limits to $100 a day and imprisonment not to exceed five days per act of contempt the court’s authority to sanction for criminal contempt. The father also argues that the trial court violated Rule 27.6, Ala. R.Crim. P., which limits probation revocation.
Section 12-3-10 provides for appellate jurisdiction of this court from “all appeals in domestic relations cases” and “all extraordinary writs arising from appeals in said cases.” “Since July 11, 1994, all contempt proceedings in civil actions have be governed by Rule 70A, Ala. R. Civ. P.” T.L.D. v. C.G., 849 So.2d 200, 204 (Ala.Civ.App.2002).
Rule 70A(a)(2)(C)(ii), Ala. R. Civ. P., defines criminal contempt as:
“(ii) Willful disobedience or resistance of any person to a court’s lawful writ, subpoena, process, order, rule, or command, where the dominant purpose of the finding of contempt is to punish the contemnor.”
Rule 70A(e)(l) goes on to provide as to punishment:
“(1) Punishment for Criminal Contempt. The court may not punish a person for criminal contempt under the provisions of this rule by imprisonment of a fine exceeding the maximum term of imprisonment or maximum amount of fine provided by law.”
Section 12-11-30(5) establishes the sanction for criminal contempt as a fine not exceeding $100 and imprisonment not exceeding 5 days. In the present case, it is undisputed that the husband committed *366 40 separate acts of contempt. The trial court had the authority under § 12 — 11— 30(5) to sentence the father to 200 days imprisonment based on the 40 acts of contempt. Even though the trial court suspended the 200-day sentence “on condition that” the father be assigned to the Madison County work-release program until he purged himself of the contempt but no longer than one year, it appears that the father is incarcerated while on the work-release program and that that conditional assignment to the work-release program for up to a year exceeded the 200 day time period allowed by § 12-11-30(5).
Section 14-8-31, adopted in 1976, authorizes a county to establish a work-release program if it so chooses. Section 14-8-33(a) provides that a county electing to establish a work-release program is authorized to adopt regulations to extend the limits of the place of confinement so that the inmate may leave “to work at paid employment while continuing as an inmate of the institution or facility in which he shall be confined except during the hours of his employment or seeking employment and traveling thereto and therefrom.” Madison County has established a work-release program.
Act No. 488, Ala. Acts 1978, pertaining to Madison County, provides that any person who has been committed to the county jail under a criminal sentence may be released therefrom for the purposes of working at gainful employment. Any part of a day spent outside of jail under work release shall be counted as a full day toward serving the sentence unless otherwise provided by the court. Any person in work release may be required by the sentencing court to report to the jail during weekends or at such times or intervals of time as the court may direct. Time spent in jail shall be deducted from the term of the sentence. “In no event shall the number of days [of] confinement exceed the number of days in the original sentence.” § 2, Act. No. 488, Ala. Acts 1978.
We find persuasive two cases from the Alabama Court of Criminal Appeals regarding work release. In Cagle v. State, 611 So.2d 1199 (Ala.Crim.App.1992), the defendant was sentenced to 12 months in jail, and the sentence was split and the defendant was ordered to serve 9 months on work release and 3 months on probation. The defendant violated a work-release program rule and the trial court revoked his work-release status and his parole, ordering the defendant to serve the entire 12-month sentence. The defendant argued that the trial court erred in failing to credit him for the time he had served on work release and that this impermissibly increased his total sentence. The Court of Criminal Appeals held that “[w]ork release is a form of custodial confinement” and that “[sjerving on work release is serving the sentence to confinement.” 611 So.2d at 1201. In Brooks v. State, 706 So.2d 821, 821 (Ala.Crim.App.1997), the Court of Criminal Appeals held that the one-year sentence in jail followed by placement on “Suspended Work Release Program until all court ordered monies were paid” violated the maximum one-year sentence allowed by law for the misdemeanor.
We note that the father does not argue that assignment to a work-release program is impermissible, but instead argues that any amount of time over 200 days was outside the trial court’s authority. This court has had cases where a party is ordered to serve a criminal-contempt sentence in a domestic-relations case under the auspices of a work-release program. See Fludd v. Gibbs, 817 So.2d 711 (Ala.Civ.App.2001)(the wife was ordered to serve her five-day sentence under the work-release program); Parcus v. Parcus, 615 So.2d 75 (Ala.Civ.App.1992)(the husband was ordered to serve 185 days on the *367 work-release program for the 37 violations of the trial court’s order).
The State argues that whether a work-release program is incarceration is moot, because the father had the option of serving the 200 days in jail or serving on the work-release program for up to a year, and he “chose” the work-release program. First, it does not appear that the father had a choice of sentences. Second, while work release involves less confinement than ordinary imprisonment because the father can work outside the prison, he is, nevertheless, in custody, and a sentence longer than 200 days was outside the trial court’s authority. The trial court had the authority to sentence Crowe to 200 days in a work-release program or to 200 days of confinement.
The father’s argument that the trial court violated Rule 27.6, Alabama Rules of Criminal Procedure, is without merit. The Committee Comments to Rule 70A state:
“Rule 70A allows contempt proceedings arising out of civil actions (whether the actual contempt is civil or criminal) to be governed by the Alabama Rules of Civil Procedure.... At the same time Rule 70A was adopted, the Alabama Rules of Criminal Procedure were amended to limit the scope of those rules to contempt proceedings arising out of criminal actions.”
Therefore, Rule 27.6, Ala. R.Crim. P., does not apply in the present case.
The judgment of the trial court is reversed and the case is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
All the judges concur.

. Rule 70A(g), Ala. R. Civ. P., provides that where a contemnor is in custody, the contempt is reviewable on appeal unless a writ of habeas corpus is available. The father admits that a writ of habeas corpus is not available, because he has not been in custody for more than 200 days.