BOLIN, Justice.
 

 The Alabama Department of Corrections (“the department”), then Governor Bob Riley,
 
 [1]
 
 and various officials of the department (all hereinafter referred to collectively as “DOC”), petitioned this Court for a writ of certiorari to review the Court of Civil Appeals’ opinion affirming in part and reversing in part the trial court’s judgment interpreting § 14-8-6, Ala.Code 1975, which allows the department to withhold a percentage of an inmate’s work-release earnings for costs incident to the inmate’s confinement.
 
 [2]
 

 Alabama Dep’t of
 
 Corr.
 
 v. Merritt,
 
 74 So.3d 1 (Ala.Civ.App.2010). We granted certiorari review. We also asked the parties to address whether, in light of our opinion in
 
 Hutchinson v. State,
 
 66 So.3d 220 (Ala.2010), the Court of Civil Appeals had subject-matter jurisdiction. However, because we hold that the judgment appealed from was not one that could be made final by the Rule 54(b), Ala. R. Civ. P., certification, we do not address the issue whether the Court of Civil Appeals or the Court of Criminal Appeals is the appropriate appellate court to review this appeal.
 

 The Court of Civil Appeals set out the facts as follows:
 

 
 *27
 
 “[DOC] appealed] from the trial court’s judgment determining that the [department] violated [its] regulations by overcharging work-release inmates for transportation costs and by misinterpreting State law by withholding more money from the gross pay of inmates’ work-release earnings than it was authorized to do under State law. Jerry Mack Merritt, Thomas Layton, Johnny Walker, Warren R. Robinson, and Darrell Williams (hereinafter referred to collectively as ‘the plaintiffs’), inmates or former inmates in the custody of the department who participated in a work-release program, cross-appeal from the trial court’s judgment determining that [the depai’tment] was authorized to charge work-release inmates for certain goods or services and to charge all inmates a fee for self-initiated medical care and a fee for drug testing conducted by entities other than the department.
 

 “... The department is authorized to operate a work-release program for inmates. Pursuant to that program, inmates are permitted ‘to leave the confines [of their places of incarceration] unaccompanied by a custodial agent for a prescribed period of time to work at paid employment.’ § 14-8-2(a), Ala. Code 1975. Work-release inmates are confined in their respective prisons during the hours they are not at work. § 14-8-2(a). Inmates who are qualified to take part in the program have the option of whether to participate.
 

 “Since 1992, § 14-8-6, Ala.Code 1975, has authorized the department to withhold up to 40% of an inmate’s work-release earnings for costs ‘incident to the inmate’s confinement.’ Before 1992, § 14-8-6 provided that the maximum amount of earnings the department was allowed to withhold from an inmate’s work-release earnings was 32.5% of those earnings. The record includes a copy of Admin. Reg. No. 410, promulgated by the department, which, in § VII.B., provides that, ‘[a]s authorized by statute, thirty-two and one-half percent (32½%) of work releasees’
 
 gross earnings
 
 will be deducted by the Department of Corrections to assist in defraying the cost of his/her incarceration.’ (Emphasis in original.) Richard Allen, the [then] commissioner of the department, testified by deposition that, after § 14-8-6 was amended to allow the department to withhold up to 40% of an inmate’s work-release earnings, the department’s policy was to withhold up to 40%, rather than up to 32.5%, of an inmate’s work-release earnings even though Admin. Reg. No. 410, § VII.B., had not been formally amended. However, that unwritten policy has been ratified by the commissioner. The copy of Admin. Reg. No. 410 submitted into evidence is dated 1997, and it includes a handwritten notation at § VII.B. stating: ‘Changed to 40%, see 14-8-6.’4 The balance of a work-release inmate’s earnings is deposited into his prison account.
 

 “Administrative Regulation No. 410 also authorizes the department to charge inmates participating in the work-release program for the cost of transportation to and from their places of employment.5 Pursuant to Admin. Reg. No. 410, § VII.B., inmates using transportation provided by the department to and from their work-release jobs may be assessed $2 for a one-way trip and $4 for a round trip. At the time of trial, however, inmates were being charged transportation costs of $2.50 for a one-way trip and $5 for a round trip.
 

 “The department also charges work-release inmates a laundry fee for clean
 
 *28
 
 ing the ‘free-world’ clothes they wear to their work-release jobs. There is no charge for laundry services for prison-issued clothing. One of the plaintiffs, Merritt, complained of having to pay $16 a month for laundry services while he was at the Loxley and Mobile work-release centers. He also complained about having to use a coin-operated laundry while at the Mobile work-release center after September 2005, because, he said, ‘minimum custody laundry was free.’
 

 “Merritt and Walker also testified that they had to purchase their own toiletries while participating in the work-release program. Those purchases must be made in addition to the money the department withholds from work-release inmates’ earnings to defray the costs of the inmates’ confinement. The plaintiffs testified that, when they were incarcerated in prisons, as opposed to work-release centers, toiletries were provided to them at no charge.
 

 “The department has promulgated a number of other regulations authorizing certain charges at issue in this case. Pursuant to Admin. Reg. No. 601, the department is authorized to charge an inmate a $3 co-pay for ‘self-initiated’ medical visits. If the visit is initiated by medical staff, a physician referral, the warden, or another prison official, the inmate is not charged the co-pay. The regulation also specifies that under no circumstances would an inmate be denied access to health care because of an inability to pay the co-pay. Allen said that the purpose of the co-pay is to discourage malingering among inmates.
 

 “Pursuant to Admin. Reg. No. 440, § V.F.3., the department is authorized to charge an inmate the cost of a urine drug test performed by an independent laboratory to confirm a positive test for illegal drugs. At the time of trial, that cost was $31.50. If the results of the independent test were negative for illegal substances, the inmate was not charged the fee. Admin. Reg. No. 440, § V.E.5.
 

 “After a hearing, the trial court entered a judgment approving the practice of charging work-release inmates the copay for ‘self-initiated’ medical care, approving the drug-testing fee charged to inmates when a drug test is administered to confirm the results of a previous drug test indicating that the inmate has tested positive for use of an illegal substance, and approving the laundry fee.
 

 “On the other hand, the trial court found that the department had failed to amend its regulations, as required by the regulations themselves, and that the department’s ‘informal’ amendment of the regulations was invalid. Therefore, the trial court held, the department did not have the authority to withhold more than 32.5% of a work-release inmate’s earnings to defray the costs of incarceration or to increase the charges an inmate pays for transportation costs from $2 to $2.50 for one-way trips and from $4 to $5 for round trips to the inmate’s place of employment. The trial court enjoined the department from withholding 40% of an inmate’s work-release earnings or from charging inmates more for transportation than the amount stipulated in Admin. Reg. No. 410, § VII.B. However, the trial court stayed its injunction for 180 days to allow the department to formally amended its regulations to bring them in line with current practices.
 

 “Because the trial court found that, under the terms of the department’s current regulations, the department was allowed to withhold only 32.5% of an inmate’s work-release earnings, the is
 
 *29
 
 sue whether [the department], by charging fees for certain goods and services in addition to withholding funds from an inmate’s work-release earnings, was exceeding the 40% cap under § 14-8-6 was moot. However, the court went on to ‘hold’ that, in amending § 14-8-6, the Legislature intended ‘to place an absolute cap on the monies [the department] could take from inmates:
 
 “In no event
 
 shall the withheld earnings exceed 40% of the earnings of the inmates.” (emphasis added).’ The trial court stated: ‘Once the 40 percent threshold is reached, [the department] is prohibited by statute from taking any more money, whether it is for costs of confinement, costs of work release, or any other fee or expense.’
 

 “The trial court further held that § 14-8-6 authorized the department to withhold a percentage of a work-release inmate’s earnings ‘actually deposited in the institution by the employer’ and not a percentage of an inmate’s gross income. Therefore, the trial court held, the department had misinterpreted the statute when it promulgated Admin. Reg. No. 410, § VII.B., which allows the department to withhold 32.5% of a work-release inmate’s gross earnings.
 

 “The trial court noted that the parties had agreed to resolve liability issues before presenting evidence on damages or class certification. Because the amount of damages relating to the issues of transportation costs and income withholding had yet to be determined, the trial court certified its judgment on the issue of liability as final pursuant to Rule 54(b), Ala. R. Civ. P. DOC appealed]; the plaintiffs cross-appeal[ed].
 

 " 4 Allen testified that he had no explanation as to why the original 1997 version of the regulation still referred to a maximum withholding of 32.5% when the statute had been amended five years earlier to allow a maximum withholding of 40%.
 

 " 5 Allen testified that inmates may choose to take public transportation to their places of employment, in which case the inmates are to pay the total cost of transportation. However, some of the plaintiffs testified that they were not given the option of taking public transportation to their places of employment.”
 

 74 So.3d at 6-8.
 

 The Court of Civil Appeals issued an opinion on June 18, 2010; it subsequently withdrew that opinion and issued another opinion on rehearing. The Court of Civil Appeals first addressed the propriety of the Rule 54(b), Ala. R. Civ. P., certification in light of the fact that the issue of damages had not yet been adjudicated. The Court of Civil Appeals held that the plaintiffs, inmates and former inmates in the custody of the department who participated in a work-release program, cannot recover money damages because the department is entitled to sovereign or State immunity; therefore, it reasoned, the judgment was properly certified as final and was reviewable by that court. Specifically, the Court of Civil Appeals addressed DOC’s argument that, although the amount of damages had not yet been determined on the issue of its collection of transportation costs and its withholding of inmates’ work-release earnings in excess of the amount provided in the regulations of the department, the judgment was final as to those issues, as well as to the issues resolved in favor of DOC and for which no damages were pending, because, it said, any claim by the inmates for a refund is barred by the doctrine of sovereign immunity. The inmates had argued that sovereign or State immunity under Art. I, § 14, Ala. Const. 1901, does not apply to actions for damages brought against State officials sued individually when it has been alleged that the officials acted fraudulently, in bad faith, beyond their authority, or
 
 *30
 
 in a mistaken interpretation of law and that the trial court had found that the individual defendants (who were sued both in their official and individual capacities) acted under a mistaken interpretation of law. The Court of Civil Appeals determined that the determinative issue for Rule 54(b) purposes was whether the inmates’ claims for refunds based upon the alleged improper collection of certain money from work-release inmates because of the individual defendants’ mistaken interpretations of law are essentially claims against the State seeking money damages. The Court of Civil Appeals, citing
 
 Stark v. Troy State University,
 
 514 So.2d 46 (Ala.1987), and
 
 Ex parte Carlisle,
 
 894 So.2d 721 (Ala.Civ.App.2004), held that because a judgment awarding refunds of the improperly collected money would affect the financial status of the State treasury, the action for refunds cannot be maintained. Because the inmates cannot recover damages in this action, the Court of Civil Appeals concluded that the judgment was properly certified as final and, therefore, was reviewable.
 

 We disagree with the Court of Civil Appeals’ conclusion that the decision of the trial court was properly certified as final pursuant to Rule 54(b), Ala. R. Civ. P.
 

 “ ‘[F]or a Rule 54(b) certification of finality to be effective, it must fully adjudicate at least
 
 one
 
 claim or fully dispose of the claims as they relate to at least one party.’
 
 Haynes v. Alfa Fin. Corp.,
 
 730 So.2d 178, 181 (Ala.1999).
 

 “ ‘If an order does not completely dispose of or fully adjudicate at least one claim, a court’s Rule 54(b) certification of the order is not effective.
 
 See Haynes v. Alfa Fin. Corp.,
 
 730 So.2d 178 (Ala.1999). Damages are only one portion of a claim to vindicate a legal right, even though the damages claimed may consist of several elements.
 
 See id.
 
 at 181. An order is not final if it permits a party to return to court and prove more damages or if it leaves open the question of additional recovery.
 
 See Precision American Corp. v. Leasing Serv. Corp.,
 
 505 So.2d 380, 382 (Ala.1987).’
 

 “Grantham v. Vanderzyl,
 
 802 So.2d 1077, 1080 (Ala.2001).
 

 “ ‘To be sure, the trial court
 
 recited the formula
 
 for certification of a judgment pursuant to Rule 54(b), Ala. R. Civ. P. However, “[n]ot every order has the
 
 requisite element of finality that can trigger the operation of Rule 5Mb).” Goldome Credit Corp. v. Player,
 
 869 So.2d 1146, 1147 (Ala.Civ.App.2003) (emphasis added). A claim is
 
 not eligible
 
 for Rule 54(b) certification unless it has been
 
 completely resolved
 
 by the judgment. In that regard, it must be remembered that “[d]amages are [an element] of a claim to vindicate a legal right.”
 
 Grantham v. Vanderzyl,
 
 802 So.2d 1077, 1080 (Ala.2001).
 

 “ ‘ “Where the amount of damages is an issue, ... the recognized rule of law in Alabama is that no appeal will lie from a judgment which does not adjudicate that issue by ascertainment of the amount of those damages.”
 
 Moody v. State ex rel. Payne,
 
 351 So.2d 547, 551 (Ala.1977). “That a judgment is not final when the amount of damages has not been fixed by it is unquestionable.” “Automatic”
 
 Sprinkler Corp. of America v. B.F. Goodrich Co.,
 
 351 So.2d 555, 557 (Ala.1977) (recitation of the Rule 54(b) formula was ineffective to render appealable a judgment that resolved liability, but reserved the issue of damages for fu
 
 *31
 
 ture resolution). “[T]he trial court cannot confer appellate jurisdiction upon this [C]ourt through directing entry of judgment under Rule 54(b) if the judgment is not otherwise ‘final.’ ”
 
 Robinson v. Computer Servicenters, Inc.,
 
 360 So.2d 299, 302 (Ala.1978). Thus, it is well-established that a claim for which damages are sought is insufficiently adjudicated for Rule 54(b) purposes until the element of damages is resolved; a judgment resolving only liability in an action seeking damages cannot be certified as final pursuant to Rule 54(b).
 
 Tanner v. Alabama Power Co.,
 
 617 So.2d 656 (Ala.1993).
 

 “ ‘That this case suffers from this defect is self-evident. The trial court purported to certify for appellate review the default judgment of 35 counterclaims, 29 of which sought
 
 damages
 
 that are
 
 yet to be determined.
 
 Because the trial court’s order was ineffective to confer appellate jurisdiction over those counterclaims, the judgment, as it relates to the 29 counterclaims seeking damages, is nonfinal and nonreviewable at this time.’
 

 “Dzwonkowski v. Sonitrol of Mobile, Inc.,
 
 892 So.2d 354, 361-62 (Ala.2004).”
 

 Certain Underwriters at Lloyd’s, London v. Southern Natural Gas Co.,
 
 939 So.2d 21, 28-29 (Ala.2006).
 

 Although the Court of Civil Appeals concluded that the plaintiffs’ claim seeking money damages (in the form of refunds for allegedly improper costs charged to the inmates’ accounts) would ultimately be barred under the doctrine of sovereign immunity, the claim had not been adjudicated because the damages had yet to be determined. “[I]t is well established that a claim for which damages are
 
 sought
 
 is insufficiently adjudicated for Rule 54(b) purposes until the element of damages is
 
 resolved;
 
 a judgment resolving only liability in an action seeking damages cannot be certified as final pursuant to Rule 54(b).”
 
 Dzwonkowski v. Sonitrol of Mobile, Inc.,
 
 892 So.2d 354, 362 (Ala.2004) (citation omitted; emphasis added). Accordingly, we reverse the judgment of the Court of Civil Appeals insofar as it holds that the trial court’s Rule 54(b) certification was proper, and we remand the cause to the Court of Civil Appeals for that court to enter a judgment dismissing the appeal in its entirety and instructing the trial court to vacate its Rule 54(b) certification.
 

 REVERSED AND REMANDED WITH INSTRUCTIONS.
 

 COBB, C.J., and WOODALL, STUART, PARKER, MURDOCK, SHAW, MAIN, and WISE, JJ., concur.
 

 [1]
 

 . While this petition was pending Governor Riley’s term of office expired. Robert Bentley succeeded Governor Riley in office. See Rule 43(b), Ala. R.App. P. ("When a public officer is a party to an appeal or other proceeding in the appellate court in that officer's official capacity, and during its pendency ... ceases to hold office, the action shall not abate....").
 

 [2]
 

 . The Court of Civil Appeals also dismissed the appeal as to one of the plaintiffs/appellees, Warren R. Robinson, on the basis that he failed to name in his complaint any defendant other than the department. That aspect of the Court of Civil Appeals’ judgment is not before us.