MURDOCK, Justice
(dissenting in case number 1111588).
I respectfully dissent. The concept of the “confinement” of an inmate necessarily encompasses whatever programs are involved in the inmate’s term of incarceration.[10] That is, I cannot agree that the inmate is not “confined” within the meaning of the statute at all times during the term of his or her incarceration. This was the conclusion of the Court of Civil Appeals in an earlier iteration of this case. See Alabama Dep’t of Corr. v. Merritt, 74 So.3d 1 (Ala.Civ.App.2010). I find the logic and reasoning of the Court of Civil Appeals in this regard to be compelling:
“DOC[11] argues that, from the plain language of the statute, the 40% cap applies only to the costs of confinement. It asserts that nothing in the statute prohibits it from collecting those fees and costs an inmate may incur for employment-related purposes, such as transportation costs to and from their place of employment, which DOC argues are not costs of confinement. We disagree.
“In capping at 40% the amount DOC may withhold from a work-release inmate’s earnings “whether it is for costs of confinement, costs of work release, or any other fee or expense,’ the trial court reasoned as follows:
*294 “ ‘[DOC’s] interpretation would allow it to take 100 percent of an inmate’s earnings if [DOC] could attribute an expense to something other than a cost of confinement. Costs of work release ([DOC’s] term used to avoid § 14-8-6) could hypothetically include the cost of guards assigned to work release, personnel to handle the paperwork for work release, .and bookkeepers who account for the money received. The exceptions would swallow the rule.’
“Section 14-8-6 is contained in the chapter of the Alabama Code authorizing the department to institute work-release programs for State inmates. That section authorizes DOC ‘to withhold from an inmate’s earnings the cost incident to the inmate’s confinement as [DOC] shall deem appropriate and reasonable.’ § 14-8-6. The statute specifically limits DOC’s power to withhold moneys from the inmate’s earnings: ‘In no event shall the withheld earnings exceed 40 percent of the earnings of the inmate.’ Id.
“DOC argues that the laundry fees and transportation fees it imposes on work-release inmates are not costs of confinement but, instead, are costs related to work release. However, although work-release inmates are not technically confined within an institution during the period that they are engaged in their work-release employment, a conclusion that costs associated with their work-release employment are not incident to their confinement does not follow. See Crowe v. State ex rel. Patterson, 860 So.2d 363, 366 (Ala.Civ.App.2003) (quoting Cagle v. State, 611 So.2d 1199, 1201 (Ala.Crim.App.1992))(‘ “[W]ork release is a form of custodial confinement, ” ’ and ‘ “[sjerving on work release is sewing the sentence to confinement. ” ’). The word ‘incident’ is defined as ‘dependent on or relating to another thing in law.’ Merriam-Webster’s Collegiate Dictionary 629 (11th ed. 2003). Thus, costs that are dependent on the fact that the work-release inmate is still, in actuality, confined in a penal institution, despite his or her temporary release for employment purposes pursuant to § 14-8-2, would be costs ‘incident’ to the inmate’s confinement.
“Without question, § 14-8-6 provides that DOC is permitted to withhold the costs incident to a work-release inmate’s confinement from the inmate’s earnings. However, the ability to withhold a portion of a work-release inmate’s earnings is restricted by a 40% cap on the amount that may be withheld. The way that DOC would have us construe the phrase ‘costs incident to the inmate’s confinement’ would render the cap meaningless. Under DOC’s interpretation, all DOC would have to do is to classify whatever cost it desires to deduct as something other than a ‘cost incident to the inmate’s confinement.’ For example, DOC might classify a particular cost as a ‘cost incident to work release’ or a cost of transportation. If the cost is not ‘incident to the inmate’s confinement,’ concludes DOC, there is no limit on DOC’s power to deduct the money from a work-release inmate’s earnings. This would allow DOC’s exception to swallow the rule and would render the cap instituted by the Legislature meaningless, something that this court should be loathe to do in light of the principle of statutory construction that requires us to give ‘ “ ‘every word, sentence, or provision ... some force and effect.’ ” ’ Ex parte Uniroyal Tire Co., 779 So.2d [227,] 236 [ (Ala.2000) ]. Section 14-8-6 provides that ‘[i]n no event shall the withheld earnings exceed 40 percent of the earnings of the inmate.’ Thus, we con- *295 elude that DOC may not withhold more than 40% of a work-release inmate’s wages.”
74 So.3d at 15-16 (emphasis omitted; emphasis added), rev’d on other grounds, Ex parte Alabama Dep’t of Corr., 74 So.3d 25 (Ala.2011).[12] See also State v. Coleman, 175 Wash.App. 1024 (2013) (not reported in P.3d) (referring to an inmate’s “confinement on work release”); Hale v. State, 992 N.E.2d 848, 859 (Ind.Ct.App.2013) (referring to an inmate’s “two-year term of confinement in the work release program”); State v. Bogert, [Ms. No.2011-253, Feb. 22, 2013] — A.3d - (Vt.2013) (referring to “confinement” in a “work release program”); Myers v. Richie, [Ms. No. 2:13cv638-TMH, Nov. 1, 2013] — F.Supp.2d - (M.D.Ala.2013) (referring to an inmate’s “confinement” at a “work release center”); 10 Ill. Comp. Statutes § 5/3-5 (defining “confinement” for purposes of the ability to vote as including inmates participating in work-release programs); United States v. Timbrook, 290 F.3d 957, 959 (7th Cir.2002) (holding that work release qualified as incarceration); and United States v. Miller, 547 F.3d 1207, 1212-13 (9th Cir.2008) (work release was ■imprisonment because it was under supervision of the Bureau of Prisons).
Finally — indeed, moreover — there is this: If the phrase “incident to the inmate’s confinement” in § U-8-6 is not broad enough to include costs incident to the inmate’s participation in the work-release program, then on what authority may the Department of Corrections withhold such costs from an inmate’s earnings? The only sentence in § U-8-6 that authorizes the Department of Corrections to withhold any money from an inmate’s earnings limits that authority to the withholding of costs “incident to the inmate’s confinement.”

. The only category of case within the exclusive, original appellate jurisdiction of the Court of Civil Appeals pursuant § 12-3-10, Ala.Code 1975, within which the present case might conceivably fall, is "cases where the amount involved ... is less that $50,000.” For all that appears, both sides agree that more than $50,000 in value will be affected by the disposition of this case; therefore, I am willing to consider this case as one that falls outside the exclusive, original appellate jurisdiction of the Court of Civil Appeals.

. “DOC” is defined in Merritt to include the Department of Corrections and the individual defendants.

. The Court of Civil Appeals also noted:
"On application for rehearing, DOC asserts that our interpretation of § 14-8-6 would prevent DOC from collecting and paying restitution, child support, and other similar charges from the income received by inmates through the work-release program. We disagree. Section 14-8-6 plainly authorizes DOC to withhold up to 40% of the wages an inmate earns in work release in order to defray the ‘costs incident to the inmate’s confinement' that are incurred, in the first instance, by DOC. The 40% cap in § 14-8-6 obviously applies only to the moneys DOC can withhold from inmates' work-release earnings for the direct benefit of DOC. No language in § 14-8-6 limits, in any way, the authority of DOC to collect and pay moneys owed by an inmate to third parties, such as victims of the inmate’s crime or children of the inmate, from income earned by the inmate from work-release employment. Assuming DOC acts in accordance with a valid court order or pursuant to statutory law and the department’s internal regulations regarding disbursements from work-release earnings, DOC can lawfully pay a third party from work-release earnings even if making such payments in addition to other valid with-holdings, would exceed 40% of those earnings. DOC simply cannot retain any part of the earnings exceeding 40% for its own benefit.”
74 So.3d at 16-17 (emphasis omitted).