Rel: January 12, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2023-2024

_____

### CL-2023-0757

_____

### Ex parte C.G.

### PETITION FOR WRIT OF MANDAMUS

### (In re: C.G.

### v.

### F.H.)

### (Lee Juvenile Court, CS-11-306.03)

_____

### CL-2023-0758

_____

### Ex parte C.G.

### PETITION FOR WRIT OF MANDAMUS

**(In re: C.G.**

**v.**

**F.H.)**

**(Lee Juvenile Court, CS-11-306.04)**

THOMPSON, Presiding Judge.

C.G. ("the father") petitions this court for a writ of mandamus directing the Lee Juvenile Court ("the juvenile court") to vacate its October 16, 2023, order, entered in case number CS-11-306.03 ("the .03 action"), ordering the father to serve a portion of his criminal-contempt sanction. The father also petitions this court for a writ of mandamus directing the juvenile court to vacate its October 16, 2023, order, entered in case number CS-11-306.04 ("the .04 action"), denying his motion to dismiss and transferring that action to the Coffee Juvenile Court. We deny the petitions.

The materials submitted to this court indicate that, pursuant to a March 2, 2020, judgment, the father was awarded custody of the children (G.B.G., born in 2006, and Ga.B.G., born in 2007) born of his relationship with S.B., ("the mother"). F.H. ("the maternal grandmother") was

2

awarded grandparent visitation under § 30-3-4.2, Ala. Code 1975.[1]  On November 15, 2021, the juvenile court entered a judgment that incorporated an agreement between the father and the maternal grandmother that modified the maternal grandmother's visitation awarded in the March 2, 2020, judgment.  On February 18, 2022, the maternal grandmother filed a petition for an order finding the father in contempt, which initiated the .03 action. In her petition, she alleged that the father had not allowed her to visit with the children in compliance with the November 15, 2021, judgment. On April 11, 2022, the father filed an answer, denying the maternal grandmother's allegations, and a counterclaim, alleging that since the entry of the November 15, 2021, judgment a material change in circumstances had occurred that supported termination of the maternal grandmother's visitation.

---

[1]The materials indicate that initially the mother had been awarded custody of the children and that she and the children had resided in Lee County.  After the mother died in February 2020, a custody dispute arose between the maternal grandmother and the father.  The March 2, 2020, judgment provided that the children would reside with the maternal grandmother until the end of the 2019-2020 school year and that they would then move to the father's residence in Coffee County and the maternal grandmother would exercise visitation.

After conducting a hearing and, subsequently, providing the father and the maternal grandmother with an opportunity to reach an agreement, the juvenile court entered its July 17, 2023, judgment, modifying the maternal grandmother's visitation[2] and finding the father in civil and criminal contempt for violating the November 15, 2021, judgment by denying the maternal grandmother visitation with the children on more than 10 occasions. As punishment for his acts of criminal contempt, the juvenile court sentenced the father to 50 days of incarceration; for his acts of civil contempt, the juvenile court ordered the father to pay the maternal grandmother's attorney and filing fees. The juvenile court suspended the father's sentence of incarceration on the condition that the father did not further violate the court's orders. Specifically, the July 17, 2023, judgment provided: "If [the father] does further violate the orders, he shall be subject to serving those days [of incarceration] as well as any additional days he may receive for future violations. The court reserves jurisdiction to determine if this suspension of incarceration should be lifted for cause." The July 17,

---

[2]The juvenile court awarded the maternal grandmother visitation beginning on Friday, July 23, 2023.

2023, judgment entered in the .03 action concluded: "This is a final order except for the items reserved above."

The materials indicate that on July 21, 2023, before the maternal grandmother could exercise the first period of visitation awarded to her in the July 17, 2023, judgment, the father's wife ("the stepmother") filed petitions to adopt the children in the Coffee Probate Court ("the probate court"). On July 21, 2023, the probate court entered interlocutory orders of adoption by the stepmother that provided in pertinent part:

> "The right of any natural grandparent to maintain visitation rights pursuant to § 30-3-4.2[, Ala. Code 1975,] is hereby stayed pending further orders of the court and terminates upon the adoption of [the children] except as provided by § 26-10A-30[, Ala. Code 1975]. Post-adoption visitation rights for any natural grandparents of the [children] may be granted when the [children are] adopted by a stepparent … Any such visitation rights may be maintained or granted at the discretion of this court at any time prior to or after the final order of adoption is entered upon petition by any natural grandparents, if it is in the best interest of the child[ren]."

(Emphasis added.)

On September 5, 2023, the maternal grandmother filed in .03 action a motion entitled "renewed motion for emergency relief." In her motion, the maternal grandmother alleged that rather than abiding by the July 17, 2023, judgment directing the father not to interfere with the

5

maternal grandmother's visitation with the children or to violate the juvenile court's orders, the father had attempted to circumvent the juvenile court's visitation award by having the stepmother file adoption petitions and by obtaining interlocutory orders of adoption from the probate court prohibiting the maternal grandmother from visiting with the children. The maternal grandmother asked the juvenile court to lift its suspension of the father's sentence of incarceration and to order the father to serve the 50-day sentence. She also asked the juvenile court to impose new sanctions in light of the father's continued failure to abide by its orders and to modify custody of the children.[3]

On September 7, 2023, the father filed a motion to dismiss the maternal grandmother's motion. In his motion, the father argued that dismissal of the maternal grandmother's motion was proper because, he said, after the stepmother filed her petitions for adoption and the probate court entered its interlocutory orders of adoption, subject-matter jurisdiction over the maternal grandmother's visitation rested in the probate court, not the juvenile court. He further argued that the motion

---

[3]The juvenile court did not address these requests in its October 16, 2023, order, discussed infra, entered in the .03 action.

should be dismissed because, by asking for additional sanctions and modification of custody, the maternal grandmother had filed a new action but had not paid a filing fee or properly served the necessary parties to invoke the juvenile court's jurisdiction.

On September 15, 2023, the maternal grandmother filed in the juvenile court a petition that created the .04 action. The maternal grandmother alleged that since the entry of the July 17, 2023, judgment, she had not been allowed to exercise her awarded visitation with the children because the stepmother had obtained interlocutory orders of adoption that had prohibited her visitation. The maternal grandmother asked the juvenile court, among other things, to find the father in contempt for preventing her from visiting with the children after the entry of the July 17, 2023, judgment, and to award her temporary custody of the children and child support.

On October 3, 2023, the father filed in the .04 action a motion to dismiss or in the alternative to transfer the .04 action to the Coffee Juvenile Court for further proceedings. In his motion, the father maintained that after the stepmother filed the adoption petitions and the probate court entered its interlocutory orders of adoption, the

probate court and not the juvenile court had subject-matter jurisdiction over the grandmother's visitation. In the alternative, the father argued that if subject-matter jurisdiction continued to rest in the juvenile court, he no longer "voluntarily submitted" to the continued jurisdiction of the juvenile court and asked that the juvenile court enter an order transferring the case to the Coffee Juvenile Court. According to the father, he and the children had lived continuously in Coffee County for more than three consecutive years preceding the filing of the maternal grandmother's petition. He asserted that venue was proper in Coffee County, pursuant to § 30-3-5(2), Ala. Code 1975,[4] and asked the juvenile court to transfer the case to the Coffee Juvenile Court.

On October 4, 2023, the juvenile court entered an order in the .04 action setting an "emergency contempt hearing." The order provided:

> "The court has received the petition for contempt, rule nisi, and emergency relief filed by [the maternal grandmother] and the motion to dismiss filed by [the father].

---

[4]Section 30-3-5(2), Ala. Code 1975, provides that venue for a petition requesting child-custody modification is proper either in the circuit court that granted custody to the current custodial parent or in the circuit court of the county where the current custodial parent and the children have resided for three consecutive years immediately preceding the filing of the petition.

This matter is set for emergency hearing on these and all pending motions.

"[The father] is ordered to appear before this court on October 12, 2023, at 1:00 p.m. … for a hearing allowing [the father] to show cause as to why [he] should not be held in contempt of court for failing to:

"COMPLY WITH THIS COURT'S ORDER OF JULY 17, 2023, REGARDING VISITATION AND FOR VIOLATION OF THE CONDITIONS TO AVOID INCARCERATION DUE TO A FINDING OF CONTEMPT OF COURT, as previously ordered by this court."

(Capitalization in original.)

The materials submitted to this court indicate that on October 10, 2023, the probate court entered final judgments of adoption.[5]  On October 10, 2023, the probate court entered an order awarding the

---

[5]That same day, the father filed a petition for a writ of mandamus in this court that our clerk designated as case number CL-2023-0738.  In his mandamus petition, the father sought an order compelling the juvenile court to grant his motion to dismiss in the .04 action or to transfer the case to the Coffee Juvenile Court.  Because the juvenile court had not conducted a hearing or entered an adverse order regarding the father's motion to dismiss, this court denied the father's petition as having been prematurely filed.  Ex parte C.G., (Ms. CL-2023-0738, Oct. 11, 2023).

maternal grandmother visitation with the children pursuant to § 26-10A-30, Ala. Code 1975.[6]

On October 13, 2023, the juvenile court conducted a hearing. The materials submitted to this court do not include a transcript of the hearing or any official court document indicating the evidence, if any, admitted at that hearing. On October 16, 2023, at 10:29 a.m., the juvenile court entered an order in the .03 action, that provided in pertinent part:

> "In this case, the court entered a contempt and modification judgment on July 17, 2023, which found the father in criminal and civil contempt of court for his ongoing refusal to comply with his agreed upon, and court-ordered, visitation. He was sentenced to 50 days in jail for his criminal contempt. The court also ordered that his sentence was 'suspended so long as he [did] not further violate the court orders in this case. If he [did] further violate the orders, he [would] be subject to serving those days as well as any additional days he may receive for future violations.' That judgment was a final order, but the court did reserve jurisdiction 'to determine if this suspension of incarceration should be lifted for cause.' …
>
> "The same judgment decreed that [the maternal] grandmother would have visitation from July 23, 2023, until the end of the summer and at other times thereafter. On July 21[, 2023], the father's current spouse, with his aid and cooperation, filed for a step-parent adoption with [the probate

---

[6]The maternal grandmother filed a petition for grandparent visitation in the probate court on October 6, 2023.

court] and somehow obtained an interlocutory [order] from that court on the same date which went to the extraordinary step of stating that the 'right of any natural grandparent to maintain visitation rights pursuant to § 30-3-4.2[, Ala. Code 1975,] is hereby stayed…' The father did not bring the children to the July 23rd visitation or any of the court-ordered visitation since then.

"Two days before the hearing in this case, on October 10, 2023, [the probate court] apparently issued an order granting [the maternal] grandmother visitation … The order does not expressly mention if there was an intent to affect the visitation previously agreed to and ordered by this court. It does not appear that the contemplated adoption had been completed yet. The order provided to this court does state 'all other motions … are denied' but it does not specifically reference the adoption of [the children].

"At issue at this time in this case is whether the previous suspension of incarceration should be lifted and [the father] should be required to serve his sentence. The evidence is clear that [the father] willfully violated the court order in THIS case again. His has been a long train of abuses and this court has no doubt that the adoption action was solely an attempt to use the court system as means to ignore his own promises and this court's orders. [The father] acknowledges that the purpose of the adoption proceedings was not for the enrichment of the children but to try to prevent the grandmother from getting custody of the children while he was in jail. This also indicates the father's intent to ignore this court's visitation orders, because that would be the reason he might go to jail. (This court had made it clear that his jail sentence would be suspended as long as there were no further violations of this court's orders.)

"The father's counsel argues that this court lost jurisdiction when [the father's] wife filed for adoption pursuant to § 30-3-4.2(j)[, Ala. Code 1975]. Firstly, the

11

children do not appear to have been adopted, so it is not clear that is even in play in regard to anything.

"More importantly, courts are allowed to exercise their inherent duty of administering justice. This court suspended [the father's] jail sentence as a courtesy to him. That courtesy was met with more contempt than gratitude, just as [the maternal grandmother's] courtesy was previously. This court warned [the father] to abide by this court's orders in this case if he wanted his incarceration to remain suspended. It is undisputed that he did not.

"That [the father] is in contempt of court and subject to 50 days in jail is already decided and adjudicated. Those issues were made final by the July judgment. The only issue before this court at this time is whether the suspension of [the father's] jail sentence should be lifted. For good cause shown, this court finds that the suspension of [the father's] jail sentence should be lifted -- at least in regards to 24 of those days.

"It is hereby ordered and decreed that:

"1. The suspension of [the father's] jail time is hereby lifted for 24 of the 50 previously ordered days in jail. The remaining 26 days remain suspended at this time.

"2. [The father] shall serve such jail sentence on weekends once a month for twelve months on the first weekend of each month for 12 months beginning in November 2023.

"….

"… Specifically, without waiving any other powers, the court reserves jurisdiction to lift the suspension of the remaining jail sentence and/or require that [the father] serve

his days in a different manner, including consecutively, in the future."

(Emphasis added.)

After entering its order in the .03 action lifting in part the suspension of the sentence of incarceration for criminal contempt ordered in its July 17, 2023, judgment, the juvenile court at 10:30 a.m. entered an order in the .04 action transferring that action to the Coffee Juvenile Court. The order provides in pertinent part:

"[The father] argues that all jurisdiction in this case has now been absorbed by [the probate court] because [the stepmother] filed an adoption in that court. He also argues, in the alternative, that this .04 case is an action to enforce visitation and because [the father,] who is the primary custodian, and the children, lived in Coffee County for three years prior to the filing of [the petition that initiated the .04 action, the father] has the option of choosing his home county as venue for this action pursuant to § 30-3-5 of the Code of Alabama, 1975.

"The [maternal] grandmother's counsel argues that because this action is another contempt action as to [the father], and not [the stepmother], this court maintains jurisdiction. …

"In regard to jurisdiction, this court does not find the juvenile courts have lost jurisdiction over the grandparent's visitation issues. There has apparently been no final order of adoption entered in regard to these children yet.

"In regards to venue, while § 30-3-5 may read as if it was intended to apply to circuit court actions such as

13

divorces, and not juvenile or district court actions, it also reads that it applies to all actions for modification or enforcement of custody and visitation issues. Our appellate courts have apparently taken the position that this statute applies to all custody actions relating to prior custody/visitation/support actions, not just circuit court actions.

"[The father's] counsel, based on the drafting of the petition, raises the question whether this is a dependency action or not. While dependency findings can overcome an adoption, this court takes no position on that at this time, because if it were a new dependency case, venue would not be in this court."

(Emphasis added.)

On October 26, 2023, the father filed two petitions for a writ of mandamus with this court. Regarding the order entered in the .03 action, the father petitions this court to order the juvenile court to vacate that order and to enter an order dismissing the action. Our clerk has designated this petition as CL-2023-0757. Regarding the order entered in the .04 action, the father asks this court to order the juvenile court to vacate its order transferring the case to the Coffee Juvenile Court and to enter an order dismissing the case. Our clerk has designated that petition as CL-2023-0758. On October 25, 2023, this court issued an order that consolidated the two petitions for purposes of appellate review

14

and an order that directed answers from the respondents. On November 6, 2023, the maternal grandmother filed an answer and brief.

> "'"The standard for determining whether a writ of mandamus will issue is as follows:
>
>> "'"'A writ of mandamus is an extraordinary remedy, and it will be "issued only when there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court." Ex parte United Serv. Stations, Inc., 628 So. 2d 501, 503 (Ala. 1993). A writ of mandamus will issue only in situations where other relief is unavailable or is inadequate, and it cannot be used as a substitute for appeal. Ex parte Drill Parts & Serv. Co., 590 So. 2d 252 (Ala. 1991).'
>
> "'"Ex parte Empire Fire & Marine Ins. Co., 720 So. 2d 893, 894 (Ala. 1998)."'
>
> "Ex parte Silver Chiropractic Group, Inc., 975 So. 2d 922, 925 (Ala. 2007)(quoting Ex parte Sawyer, 892 So. 2d 898, 901 (Ala. 2004))."

Ex parte Wall, 983 So. 2d 380, 381 (Ala. 2007). "'The petitioner bears the burden of proving all four of these elements before a writ of mandamus will issue.'" Tatum v. Freeman, 893 So. 2d 1213, 1218 (Ala.

Civ. App. 2004). "[T]he issue of subject-matter jurisdiction is reviewable by way of a petition for a writ of mandamus. Ex parte U.S. Bank Nat'l Ass'n, 148 So. 3d 1060, 1065 (Ala. 2014); Ex parte Rhodes, 144 So. 3d 316, 318 (Ala. 2013)." Ex parte Moultrie, [Ms. CL-2022-0864, Oct. 21, 2022] ___ So. 3d ___ (Ala. Civ. App. 2022).

The father contends that the juvenile court had an imperative duty to dismiss the maternal grandmother's "renewed motion for emergency relief" filed in the .03 action and the petition initiating the .04 action and refused to do so. According to the father, the probate court's entry of the interlocutory orders of adoption on July 21, 2021, the final judgments of adoption on October 10, 2023, and the order awarding the maternal grandmother grandparent visitation on October 11, 2023, divested the juvenile court of subject-matter jurisdiction over the issue of the maternal grandmother's visitation. He insists that the probate court has jurisdiction, and, consequently, the juvenile court only had authority to dismiss these actions. See Ex parte Thompson Tractor Co., 227 So. 3d 1234, 1238 (Ala. Civ. App. 2017)("A court that lacks jurisdiction has the power only to dismiss the action.")

16

The father, however, does not demonstrate that the juvenile court erred in denying his motions to dismiss. In its October 16, 2023, order in the .04 action, the juvenile court observed that the father had questioned whether the maternal grandmother had initiated a new dependency action and, consequently, implied that jurisdiction may be proper in the juvenile court. As previously noted, § 30-3-5, Ala. Code 1975, provides that venue for a petition requesting child-custody modification is proper either in the circuit court that granted custody to the current custodial parent or in the circuit court of the county where the current custodial parent and the children have resided for three consecutive years immediately preceding the filing of the petition. Because the materials submitted to this court indicate that the March 2, 2020, judgment awarding the father custody of the children was entered by the juvenile court, venue for the .04 action was proper in Lee County. It also appears undisputed that the father and the children have lived in Coffee County for three consecutive years immediately preceding the filing of the maternal grandmother's motion. The father is correct that in Ex parte Johnson, 692 So. 2d 843 (Ala. Civ. App. 1997), this court held that a trial court must transfer venue in matters seeking

17

to modify custody on motion of the custodial parent. Here, the juvenile court, recognizing that the father had established that venue was no longer proper in Lee County and that it was proper in Coffee County, transferred the case, as requested by the father, to the Coffee Juvenile Court. Thus, the juvenile court granted the father's motion to transfer and did not enter an adverse ruling as to jurisdiction. Consequently, the father has not demonstrated a clear, legal right to mandamus relief in the .04 action based on the probate court's proceedings and judgments. See Ex parte Drury Hotels Co., LLC, 303 So. 3d 1188, 1194 (Ala. 2020)(refusing to address petitioner's argument because an adverse ruling had not been entered); and Ex parte Veteto, 230 So. 3d 401, 403 (Ala. Civ. App. 2017)("[T]he trial court has not yet entered written orders on the motions .... Therefore, there are no adverse rulings for this court to consider at this time. Moreover, it is the duty of this court to review the propriety of orders and judgments made in the trial court; this court cannot issue rulings on the motions pending before the trial court.").

Likewise, we conclude that the juvenile court had jurisdiction to lift the father's suspended sentence of incarceration ordered in the July 17, 2023, judgment and that any actions taken by the probate court

18

subsequent to the entry of the July 17, 2023, judgment did not impact the juvenile court's jurisdiction to lift the suspended sentence ordered in its July 17, 2023, judgment and to order the father to serve in part the sentence.

It is well established that

"[a] trial court retains jurisdiction to interpret and enforce its owns judgments.

"'A trial court has inherent authority to interpret, clarify, and enforce its own final judgments. See Helms v. Helms' Kennels, Inc., 646 So. 2d 1343, 1347 (Ala. 1994)("a trial court does have residual jurisdiction or authority to take certain actions necessary to enforce or interpret a final judgment"); Gild v. Holmes, 680 So. 2d 326, 329 (Ala. Civ. App. 1996)("A trial court possesses an inherent power over its own judgments that authorizes it to interpret, clarify, implement, or enforce those judgments."). Thus, even after this Court, on the direct appeal, affirm[s] the trial court's ... judgment, [the trial] court retain[s] jurisdiction to interpret and clarify that judgment."

"State Pers. Bd. v. Akers, 797 So. 2d 422, 424 (Ala. 2000)."

Stephens v. Nelson, 141 So. 3d 1073, 1076 (Ala. Civ. App. 2013).

The juvenile court's jurisdiction to enter its July 17, 2023, judgment is not in dispute, and any subsequent loss of jurisdiction did not divest the juvenile court of jurisdiction to enforce its judgment

19

entered when it possessed jurisdiction. See § 12-1-7, Ala. Code 1975 (providing that "[e]very court shall have power ... [t]o compel obedience to its judgments, orders and process and to orders of a judge out of court, in an action or proceeding therein"); and McMorrough v. McMorrough, 930 So. 2d 511, 516 (Ala. Civ. App. 2005)(plurality opinion)(noting that "Alabama law is well established that a trial court has the power to enforce its judgment and to enter such orders as may be necessary to render a judgment effective"). Accordingly, the father has not demonstrated a clear, legal right to dismissal of the .03 action based on the proceedings and judgments in the probate court.

The father also maintains that the juvenile court did not have subject-matter jurisdiction to enter the October 16, 2023, order in the .03 action because, he says, the maternal grandmother's requested relief for additional sanctions for contempt and a custody modification in her motion for emergency relief created a new action. He argues that because the maternal grandmother did not pay a filing fee when she filed her motion, she did not invoke the juvenile court's jurisdiction over these new claims and that, therefore, the juvenile court erred by not dismissing the action. See § 12-19-70, Ala. Code 1975, De-Gas, Inc. v.

Midland Res., 470 So. 2d 1218, 1222 (Ala. 1985)(requiring the payment of filing fees or a court-approved verified statement of financial hardship at the time of filing the complaint), and Farmer v. Farmer, 842 So. 2d 679, 681 (Ala. Civ. App. 2002)(holding that "the failure to pay the filing or docketing fee is a jurisdictional defect").

Our review of the materials before us indicates that the payment of a filing fee was not required. The juvenile court's October 16, 2023, order in the .03 action reflects that it addressed only one matter, i.e., whether the suspension of the father's sentence of incarceration ordered in the July 17, 2023, judgment should be lifted. Consequently, the juvenile court acted within its jurisdiction and entered an order lifting the suspension of the father's sentence of incarceration. Cf. Crowe v. State ex rel. Patterson, 860 So. 2d 363 (Ala. Civ. App. 2003). To hold that the juvenile court, upon learning that the father had not complied with its July 17, 2023, judgment, did not have jurisdiction to act, either sua sponte or at the request of a party, to lift the suspension of a sentence ordered as a sanction for an earlier finding of criminal contempt would inappropriately limit the juvenile court's ability to fashion a sanction suitable to the facts and circumstances of each case. Therefore, we

conclude that the payment of a filing fee to invoke the juvenile court's jurisdiction was not required. See Rowland v. Tucker, 286 So. 3d 713 (Ala. Civ. App. 2019)(implying that a motion to enforce a judgment that does not include a newly stated cause of action does not require the payment of a filing fee). Accordingly, the father has not demonstrated a clear, legal right to mandamus relief based on the foregoing jurisdictional argument. Vann v. Cook, 989 So. 2d 556, 559 (Ala. Civ. App. 2008)(recognizing that a judgment entered by a court with subject-matter jurisdiction is not void).

Lastly, the father argues that if the juvenile court had jurisdiction to consider whether to reinstate the sanction it had suspended in the July 17, 2023, judgment, the juvenile court exceeded its discretion by refusing to transfer the .03 action to the Coffee Juvenile Court. The materials submitted to this court, however, do not indicate that the father requested that the juvenile court transfer the .03 action to the Coffee Juvenile Court. As our supreme court has held:

> "In determining, on mandamus review, whether the trial court exceeded the limits of its discretion, 'the appellate courts will not reverse the trial court on an issue or contention not presented to the trial court for its consideration in making its ruling.' Ex parte Wiginton, 743 So. 2d 1071, 1073 (Ala. 1999)."

22

Ex parte Ebbers, 871 So. 2d 776, 786 (Ala. 2003). Accordingly, because the materials before us do not indicate that the father presented any argument in the juvenile court regarding the transfer of venue in the .03 action, the father has not demonstrated that he has a clear, legal right to the transfer of the .03 action to the Coffee Juvenile Court.

Based on the foregoing, the father's petitions are denied.

CL-2023-0757 -- PETITION DENIED.

CL-2023-0758 -- PETITION DENIED.

Moore, Edwards, Hanson, and Fridy, JJ., concur.